(No. 28326.—

KATHERINE HANSEN *et al.*, Appellants, *vs.* JOHN RALEIGH, Appellee.

*Opinion filed November 21, 1945.*

LLOYD C. MOODY, (HERBERT BEBB, of counsel,) both of Chicago, for appellants.

CHARLES W. LAMBORN, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, Katherine Hansen and Archer Hansen, her husband, brought an action in the superior court of Cook county against the defendants, the town of Cicero, a municipal corporation, and John Raleigh, to recover damages for personal injuries sustained by plaintiff Katherine Hansen and for damages to her husband's automobile occasioned by a collision on October 17, 1940, between

automobiles driven by Katherine Hansen and defendant Raleigh, respectively, at the intersection of Central and Grand avenues in the city of Chicago. The complaint consisted of ten counts, all charging Raleigh with negligence or wilful misconduct in the operation of the car he was driving. By counts 1 to 8, inclusive, Katherine Hansen claimed damage, and in the last two counts her husband sought damages. The first count charged negligence in general terms; the second, negligence in operating an automobile at unreasonable speed, contrary to section 49, article VI, of the Motor Traffic Law (Ill. Rev. Stat. 1945, chap. 95½, par. 146); the third, wilful, wanton and malicious operation of the automobile; the fourth and fifth, wilfully operating an automobile through a red stop light, contrary to section 32, article III, of the Motor Traffic Law (Ill. Rev. Stat. 1945, chap. 95½, par. 129,) and an ordinance of the city of Chicago, namely, section 14 of chapter 27 of the Municipal Code, and the sixth, wilful use of a siren, contrary to section 74 of chapter 27 of the Municipal Code. The seventh count alleged the negligent operation of the automobile by Raleigh; that the town of Cicero was operating the car by him as its duly authorized agent and officer, and that he was acting, employed and engaged as agent, officer and fire commissioner of the town at the time. The eighth count repeated the allegations of counts 1 to 5, and alleged, further, that Raleigh was at the time employed, engaged and acting for the town of Cicero as its agent and officer. Upon motion, the complaint was dismissed as to the town of Cicero because no notice had been given, as required by statute.

Raleigh, hereafter referred to as defendant, filed an answer denying the allegations of negligent and wilful misconduct and averring the negligent operation of plaintiffs' car by Katherine Hansen. Answering the second count, defendant averred that, in the pursuit of his duties as fire commissioner of Cicero, he was operating an automobile

supplied and owned by the town, painted red and equipped with siren and lights to indicate the nature of the vehicle, conformably to section 2, subsection (d), article I, of the Motor Traffic Law (Ill. Rev. Stat. 1945, chap. 95½, par. 99); that, having heard the Chicago fire alarm, and as agreed upon between the town of Cicero and the city of Chicago, and acting upon orders given him by the former, he drove toward the location of the fire. He denied that section 32, article III, of the Motor Vehicle Law refers to a fire vehicle responding to an alarm. In answer to count 6, charging the wilful use of a siren contrary to the Municipal Code, defendant averred that he was a fire department official and, at the request of the city of Chicago, made and agreed to by the town of Cicero, he was assisting, or attempting to assist, in controlling and extinguishing a fire in Chicago, and properly used the siren, at the same time denying that the ordinance prohibited its use, as he was one of those in excepted classes. By way of an affirmative defense not limited to any one count, defendant stated that the town ordered him, pursuant to agreement between the town of Cicero and the city of Chicago, to respond to fire alarms on the west side of Chicago, nearest to Cicero, the same as in Cicero, and use fire apparatus, equipment and firemen, if needed to aid in controlling and extinguishing fires; that he had done so for a long time past; that he was so acting in response to a fire alarm at the direction of the town of Cicero when the collision occurred and that, under the statute, he was not liable, as he was carrying out orders of the town of Cicero.

Plaintiffs' motion to strike certain portions of the answer was allowed in part, and defendant was ordered to file an amended answer. Defendant subsequently interposed a pleading captioned "Additional Answer," setting up that he had verbal orders from the president and board of trustees of the town of Cicero, given him as fire com-

missioner, to respond to alarms in Chicago, either personally or with firemen and equipment, to aid in extinguishing fire for the protection of property and life, if and in case the fires were in close proximity to the town of Cicero; that such orders had been in effect for more than fifteen years; that he believed there was no ordinance of the town to this effect; that the same orders and practice are in effect in Chicago, and that the object of this practice, so far as the town of Cicero is concerned, is that its fire department may obtain training and experience in control of fires in the manner used in metropolitan cities. Plaintiffs' motion to strike the additional answer was allowed, and the answer stricken, the order of the court describing it as an "amended answer."

Thereafter, a third answer, styled by defendant a second amended additional answer, was filed. In this answer, defendant alleged that he was a duly authorized agent of the town of Cicero, acting as fire commissioner, responding to a fire alarm in the usual manner, by and with the consent of the board of trustees of the town of Cicero; that there was no written agreement or ordinance between Chicago and Cicero relating to mutual assistance in combatting fires, but that the town of Cicero and the city of Chicago, in reciprocity and comity, had mutually employed fire equipment for years.

Defendant filed a motion to dismiss, and plaintiffs an answer thereto. Before disposition was made of the motion, defendant, by leave of court, filed a second motion to dismiss, which was substantially the same as the first. The principal grounds for dismissal relied upon were the allegations and admissions appearing in the pleadings upon the face of the record that defendant was the fire commissioner of the town of Cicero and acting in the discharge of his duties of such fire commissioner at the time of the accident and that the Firemen's Immunity Act (Laws of 1931, p. 618,) grants immunity to a member of

a municipal fire department while operating a motor vehicle engaged in the performance of his duties as fireman. The second motion also set up the failure of plaintiffs to answer "special defenses." This motion was later supported by a brief, three affidavits and two letters. The affidavits were to the effect that, in October, 1932, the board of trustees of Cicero adopted a resolution authorizing the use of Cicero fire equipment to aid the Chicago department, and giving the commissioner leave to attend all fires in Chicago and Berwyn for the purpose of offering aid necessary for extinguishing fires in those municipalities and to use the fire department automobile. Two letters, both from the fire marshal of Cicero to defendant, dated May 11, 1944, list five fires to which the Chicago fire department responded in Cicero from December 31, 1935, to and including March 8, 1943, and Cicero responses to Chicago fires on nine different dates from May 19, 1934, to and including April 15, 1944. Plaintiffs' answer to the motion to dismiss, supported by a brief in opposition, denied that defendant was operating a vehicle owned and used as a part of Cicero's fire department. Replying further, plaintiffs denied that defendant was engaged in the performance of duties as an employee of the Cicero fire department, within the contemplation of the Firemen's Immunity Act but, instead, was going to a fire in Chicago as an observer. Plaintiffs added that defendant was not responding to an emergency call and, hence, was required to stop in obedience to the stop sign, which he failed to do, thereby causing the accident. The motion to dismiss was sustained and judgment of dismissal entered. At the same time, plaintiffs, by leave of court, filed a reply. Plaintiffs also made a motion submitting propositions of law, among others, that the Firemen's Immunity Law contravenes sections 22 and 23 of article IV of our constitution and that the immunity purportedly granted is limited to duties "as fireman" and that

defendant, at the time of the collision, was a mere observer not engaged in duties "as fireman."

From the foregoing confused aggregate of allegations, denial, admission, and motions to dismiss and strike, finally emerge the issues between the parties in the trial court and upon this appeal, namely: (1) Is a member of a municipal fire department exempt, under the laws of Illinois, from liability for negligence in operating a vehicle of the department in the line of his duty as fireman, even though he may be negligent; (2) If the act is valid, does its grant of immunity extend to negligence in operating a vehicle of the fire department not in the line of his duty as a fireman, and (3) Do the pleadings present an issue of fact as to whether defendant was operating the automobile of the fire department of the town of Cicero at the time of the collision *in* or *beyond* the line of duty? From the judgment of dismissal entered against them, plaintiffs prosecute a direct appeal, the construction of our constitution and the constitutional validity of a statute being necessarily involved.

In 1931, the General Assembly adopted "An act in relation to the liability for injuries, caused by the operation of motor vehicles by members of municipal fire departments while engaged in the performance of their duties." In 1941, the act was repealed and incorporated in the Revised Cities and Villages Act as section 1-13 of article 1 of this act. (Ill. Rev. Stat. 1941, chap. 24, par. 1-13.) Plaintiffs first contend that the statute in question, to the extent it provides that "in no case shall a member of a municipal fire department be liable in damages for any injury to the person or property of another caused by him while operating a motor vehicle while engaged in the performance of his duties as a fireman," is unconstitutional and void. They urge that it is special legislation in unreasonably discriminating in favor of firemen operating automobiles in re-

sponding to a fire alarm and against drivers of police ambulances and other emergency vehicles. Section 22 of article IV of our constitution prohibits the General Assembly from passing any local or special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. This provision of our constitution supplements the equal-protection provision of the fourteenth amendment of the Federal constitution and prevents the enlargement of the rights of one or more persons in discrimination against the rights of others. (*People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557.) Laws are not to be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. The fact that a law discriminates against an individual or group is not, of itself, sufficient to render it invalid. (*Keig Stevens Baking Co.* v. *City of Savanna,*. 380 Ill. 303.) Classification of persons or objects for purposes of legislative regulation is not open to constitutional objection if it be not arbitrary but is based upon some substantial difference bearing proper relation to the classification. (*Crews* v. *Lundquist,* 361 Ill. 193; *Lueth* v. *Goodknecht,* 345 Ill. 197.) The question of classification is primarily for the legislature, and it can never become a judicial question except for the purpose of ascertaining, in any given situation, whether the legislative action is clearly unreasonable, and before a court can interfere with the legislative judgment it must be able to say that there is no fair reason for the law which would not require with equal force its extension to others whom it leaves untouched. (6 Ruling Case Law, p. 385, sec. 376; *Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303; *Bowers* v. *Glos,* 346 Ill. 623; *People* v. *Callicott,* 322 Ill. 390; *Stewart* v. *Brady,* 300 Ill. 425.) A legislative classification does not have to be so broad and comprehensive as to include all the evils which might by possibility be brought within its terms.

(*Bowers* v. *Glos,* 346 Ill. 623.) Nor need the classification be scientific, logical or consistent, provided it is not arbitrary and rests upon a reasonable basis. (*Bowers* v. *Glos,* 346 Ill. 623; *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103; *Stewart* v. *Brady,* 300 Ill. 425.) The question for us to determine, therefore, is whether there is a reasonable basis for the classification adopted by the General Assembly in distinguishing between firemen and other operators of emergency vehicles.

Fire protection is a matter of public welfare in which the general public has a vital interest. (*People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541.) In *Bryan* v. *City of Chicago,* 371 Ill. 64, this court held valid and constitutional the classification contained in the first part of the statute which imposes liability upon the municipality for negligence of its firemen in the operation of motor vehicles while engaged in the performance of their duties as firemen but did not include municipal liability for negligence in the operation of motor vehicles in the performance of other governmental functions. We there stated that the size, equipment and manner of travel of fire department vehicles and the greater danger in their operation furnished a reasonable basis for the classification. The size, equipment and manner of travel of fire department vehicles was referred to as a manifestation of such greater danger. The question, however, as to whether there is a reasonable basis for making a law applicable to a fireman operating an automobile while responding to an alarm of fire without also including within the application of the law agents or employees of the municipality while operating automobiles in the exercise, in emergency, of other governmental functions was not therein determined. It certainly cannot be said that delay or interruption in the operation of an ambulance or the operation of a police car in pursuit of a fleeing criminal is fraught with possibility of the same extensive and disastrous effect to the

entire community as delay or interruption of an automobile conveying a fireman to the scene of a fire. These differences bear a direct relation to the classification in question and furnish a reasonable basis therefor. No other governmental function is so vital to the existence and welfare of the municipality as that of fire protection in the prompt extinguishment of fires. A fire, if unchecked in its early stages, may become beyond control and lay waste the greater portion or the whole of a municipality.

The contention of plaintiffs that the proviso in the statute we are considering should be construed as limited to typical fire-fighting equipment is not sound. It is obvious that it is just as essential for the firemen to reach the scene of the fire as for the fire-fighting apparatus and equipment to arrive there.

A further objection urged against the constitutionality of the statutory provision that in no case shall a member of a municipal fire department be liable in damages for any injury to the person or property of another, while operating a motor vehicle while engaged in the performance of his duties as fireman, is that this provision extinguishes the municipality's right of indemnity against the fireman and is, therefore, in contravention of section 23 of article IV of the constitution prohibiting the General Assembly from releasing or extinguishing the liability of any individual to any municipal corporation in the State. This objection can be of no avail to plaintiffs, since they are in no way affected by such operation of the act. (*Crews* v. *Lundquist,* 361 Ill. 193; *People* v. *Murray,* 307 Ill. 349.) It is a well-settled rule that a law general in terms and enacted to apply to all conditions of fact, both those prohibited by the constitution and those concerning which the General Assembly has the power to legislate, will be held valid to the extent of the legislative power and void only as to the excess. (*People* v. *Murray,* 307 Ill. 349; *Alberts*

v. *Town of Danforth,* 281 Ill. 521; *Scown* v. *Czarnecki,* 264 Ill. 305.) The extinguishment of the fireman's liability to the city for reimbursement is not of such import it must be inferred that without it and its assumed validity the legislation would not have been enacted. It follows, therefore, that this objection to the constitutionality of the statute is of no importance in this action.

We will next consider plaintiffs' further contention that it does not appear that the duties in which defendant was engaged as fireman at the time of the collision were such as to bring him within the immunity proviso of the statute and, also, the subordinate contention that the trial judge, in ruling upon defendant's motion to dismiss, was limited to a consideration of the allegations of the complaint. The distinction · between a fireman operating a motor vehicle while engaged in the performance of his duties and other municipal employees operating motor vehicles while engaged in the performance of their duties, or between such fireman and the operators of other emergency vehicles, which prevents the statute granting immunity to firemen from being discriminatory and unconstitutional, is based upon the greater necessity for haste and the greater danger from delay in the fighting of fire. The only consistent and constitutional construction of this immunity provision of the statute, therefore, is that the immunity granted extends only to firemen operating motor vehicles while engaged in fire fighting or in the performance of duties directly relating thereto. If defendant, at the time of the collision, was on his way to the fire as an observer to obtain knowledge of metropolitan fire-fighting methods, clearly he was not protected by the statute. If, however, his purpose was to assist in fighting the fire, pursuant to instructions given him by the president and board of trustees' of the town of Cicero, then it is equally as clear that he is within the protection of the statute, and it would make no difference that

the purpose of his trip was to gain experience in metropolitan fire-fighting methods as well as to aid in the control and extinguishment of the fire.

By their complaint, plaintiffs alleged that defendant was operating a motor vehicle as the duly authorized agent and officer of the town of Cicero, a municipal corporation, and was acting, employed and engaged as agent, officer and fire commissioner at the same time. The complaint did not state, however, that the duties in which defendant was engaged at the time of the collision related to fire fighting or the performance of duties directly relating thereto. In short, the allegations of the complaint did not show that the pursuit of defendant's duties called for unreasonable speed, ignoring a red stop light, and the wilful use of a siren. As narrated, defendant, by his successive answers, averred that he was responding to a fire alarm in the usual manner, pursuant to an oral understanding between the city of Chicago and the town of Cicero. Affidavits to the effect that, in 1932, the board of trustees of Cicero adopted a resolution to the same effect were filed to support defendant's motion to dismiss. Section 48 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 172,) provides that a defendant may file a motion to dismiss an action where any of nine specified defects appear on the face of the complaint and, further, that he may file a similar motion supported by affidavits where any of these defects exist but do not appear upon the face of the complaint. These enumerated defects include those which, prior to the enactment of the Civil Practice Act, would have been presented by pleas in abatement and, in addition, other defenses such as the Statute of Limitations and the Statute of Frauds. No one of the grounds included in defendant's motion to dismiss and, in particular, the ground of statutory immunity, is listed in section 48. Nor is there any general language extending section 48 to other defects similar to the nine described. Other defects are covered by motion under

section 45 (Ill. Rev. Stat. 1945, chap. 110, par. 169,) providing for the use of motions instead of demurrers but containing no provision for affidavits. The obvious purpose of section 48 is to obtain a speedy disposition of issues of law or of readily provable issues of fact, with a reservation of jury trial upon disputed fact questions.

Section 48 was adopted from Rules 106 to 110 of the New York Rules of Civil Practice. Rule 106 authorizes a motion to dismiss without affidavit when the face of the complaint discloses: (1) lack of jurisdiction of the person of the defendant; (2) lack of jurisdiction as to subject of the action; (3) lack of capacity to sue; (4) another action pending, and (5) the complaint fails to state a cause of action. New York Rule 107 authorizes a motion for judgment dismissing the complaint "on the complaint and affidavit," on the first four grounds described in Rule 106 and, also, on the grounds of *res judicata,* the Statute of Limitations, release, the Statute of Frauds, and infancy or other disability of the defendant. When a statute is adopted from another State, the judicial construction previously placed on the statute by the courts of that State accompanies it, and is treated as incorporated therein. (2 Lewis' Sutherland on Stat. 'Const. 2d ed. sec. 404; *People* v. *Linn,* 357 Ill. 220.) There is no expression or manifestation of a legislative intent that the provisions of section 48 were not enacted in the light of the construction given them by the courts of the State of New York. In *Hoffman* v. *Mittlemann,* 263 N. Y. Supp. 899, the defendant relied upon the Statute of Limitations and filed a motion without an affidavit. Denying a motion to dismiss, the court observed, "Motions to dismiss a complaint where the defect appears on the face thereof are limited to the defects specified in rule 106, Rules of Civil Practice, and the ground here urged is not within such specifications. Nor is rule 107 available to defendant for no affidavit is submitted as required by its provisions." A converse situa-

tion was presented in *Haas* v. *New York Post Graduate Medical School and Hospital,* 226 N. Y. Supp. 617, where the defendant filed a motion, supported by affidavit, and the court said that rule 106 "does not permit the consideration of affidavits." We are of the opinion that a motion based on the grounds set out by defendant, especially the ground of statutory immunity, cannot properly be supported by affidavits. The benefits of the Firemen's Immunity Act must be invoked as an affirmative defense, conformably to section 43(4) of the Civil Practice Act. (Ill. Rev. Stat. 1945, chap. 110, par. 167.) It follows that disposition of defendant's motion to dismiss must be made upon the allegations of plaintiffs' complaint.

The proviso of the statute in controversy applies only to a member of the fire department while engaged in the performance of his duties *as fireman.* It does not purport to exempt members of fire departments solely upon a showing that they were in the pursuit of their general duties. As previously stated, the constitutional validity of the statute is dependent upon construing the grant of immunity only to firemen actually engaged in their duties as firemen, such as fire fighting or duties directly related thereto. In short, the statute admits of no construction other than that a fireman may be engaged at the time of a collision (1) "in the performance of his duties as a fireman" or (2) in the performance of duties not as a fireman. It is insufficient that defendant averred he was acting "in the performance of his duties," a fact which plaintiffs have conceded. The statute cannot be construed to grant immunity from liability to a fireman who, while enroute to a fire in another city merely as an observer, drives at an unreasonable rate of speed, ignores stop signs and, in general, the provisions of the Motor Traffic Law and applicable municipal ordinances. If, however, he is going to a fire for the purpose of rendering assistance as a fire fighter, the effectiveness of his aid may very well depend upon him driving at an

excessive speed and ignoring stop signs. Certainly, there is no allegation in the complaint that defendant's trip was so related to fire fighting as to come within the immunity granted by the legislature.

Defendant maintains, however, that his several answers disclose two purposes in responding to fires beyond the territorial limits of Cicero, the first to give assistance in extinguishing fires, and, the other, to afford the firemen training and experience in the technique of fire fighting. He argues that a fireman could not know, in advance, what would be required of him when he arrived and that, consequently, he would be acting within his duties "as a fireman" in responding to the fire alarm and would thus be protected by the immunity proviso from liability to third persons. The crux of his argument is, "The only requirement is that the fireman shall be operating a motor vehicle while engaged in his performance of duties as fireman." This is not a correct statement of the law. The immunity proviso of the statute does not apply to every nonemergency trip that a fireman may take. A concession that when a fireman is responding to a typical alarm he could not know in advance what would be required of him does not aid defendant if, as a matter of fact, he knew that the trip was not a fire-fighting trip and that fire fighting was a remote possibility, incidental to observation and educational purposes. To hold that for a fireman of an adjoining municipality to arrive at the scene of a fire in the city of Chicago in the capacity of an observer is of as paramount importance as reaching a fire either in his own municipality or in the city of Chicago to render aid as a fire fighter would give an absurd, not to say mischievous, construction to the statute. A familiar rule of statutory construction is that where a statute admits of two constructions, one rendering the statute reasonable and wholesome, and the other leading to mischievous, if not absurd, results,

the former construction should be adopted. *Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41.

Plaintiffs' complaint states a cause of action so far as defendant Raleigh is concerned. If the latter were going to a fire merely as an observer, the cloak of immunity afforded by the Firemen's Immunity Act will not aid him. By the pleadings, a question of fact was presented as to whether defendant's trip on October 17, 1940, was of an emergency character entitling him to invoke the immunity provision of the statute or was, instead, a trip not protected by the statute. Accordingly, the judgment of the superior court of Cook county is reversed and the cause remanded, with directions to overrule defendant's motion to dismiss plaintiffs' complaint and to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*