(No. 29149.—▮

FATHER BASIL'S LODGE, INC., Appellant, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed March 20, 1946*

248

IRVING BREAKSTONE, of Chicago, for appellant.

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, FRED V. MAGUIRE, and SYDNEY R. DREBIN, of counsel,) all of Chicago, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellant is a nonprofit corporation, organized under the laws of this State for the purpose, among other things, of providing homes for aged and enfeebled persons; and in carrying out this corporate purpose it conducts and maintains the Sunset Harbor Rest Home for aged men receiving pensions under the Old Age Assistance Act of Illinois. The home is located at 5749 Woodlawn avenue, in the city of Chicago, and has been in operation since June 1, 1944. It is a two-story brick building, built for and originally used as a private residence. It was subsequently converted into and used as a fraternity house and is now owned by the Zeta Beta Tau fraternity, from whom appellant rents the property. At the time of the institution of this suit twenty-five men were living in the home, and we infer from the evidence that it usually has about that number. These men are referred to the home by the social workers of the Department of Public Welfare of the county. They all receive old age pensions which they turn over to appellant, who in return furnishes them both board and lodging and any other necessities which they may require. The ages of the twenty-five men now living at the home range from sixty-five to seventy-eight years. None of them are sick or helpless. They all perform domestic duties and ordinary housework incident to the maintenance of the home. They make their own beds, scrub, dust, wash

dishes and serve as waiters at the table. They are allowed to have visitors and can come and go from the home as they please.

This suit was filed in the superior court of Cook county by appellant March 27, 1945, to restrain the city of Chicago and its officials from enforcing two ordinances; one, which is chapter 136 of the municipal code of Chicago and consists of fourteen sections, being an ordinance defining and providing for the licensing and regulation of "Homes," and the other, which is chapter 136.1 of the code and contains sixteen sections, being an ordinance defining and providing for the licensing and regulation of "Nursing Homes." The case was heard before the chancellor upon the complaint and answer thereto and a decree was entered May 29, 1945, dismissing the complaint for want of equity. Plaintiff has appealed directly to this court, the trial judge having certified that the validity of two municipal ordinances is involved and that in his opinion the public interest requires a direct appeal to this court.

Appellant claims that the city was without authority, either express or implied, to pass the ordinances and the same are therefore invalid; or, if the city did have power to pass ordinances defining, regulating and licensing homes and nursing homes, respectively, that these particular ordinances are unreasonable and discriminatory and deprive appellant of its property without due process of law, in violation of the State and Federal constitutions. Appellant also contends that in any event the ordinances are not applicable to a home such as the Sunset Harbor Rest Home operated by appellant at 5749 Woodlawn avenue, Chicago.

The ordinance licensing and regulating homes defines a home, as used in the ordinance, to mean any institution, place or family used for the reception or care of three or more infants or children apart from their parents, and also provides that a home is further defined to mean any institution used for the reception or care of persons who are

dependent or not capable of properly caring for themselves, and shall be understood to include homes for the aged or infirm, orphan asylums, half-orphan asylums, refuges and shelters. The ordinance licensing and regulating nursing homes defines nursing homes to mean any place for the reception or care of three or more persons of the age of sixteen years or over who are not related to the keeper and are dependent or not capable of properly caring for themselves. It further provides that for the purposes of the ordinance the term "nursing home" includes a mutual care home, which is defined as meaning any place for the reception or care of three or more persons under sixteen years of age, who are not related to the keeper and whose parents or guardian are also resident in the same place and share daily care of such persons with the keeper.

These ordinances require the operators of any such homes to which they relate to be licensed. They also contain fire prevention regulations and ventilation and sanitation requirements, and provide for the isolation of persons in the home suffering from communicable diseases and for the inspection of the premises by the board of health. Each ordinance provides that any person violating any of its provisions shall be fined not less than $10 nor more than $200 for each offense, and further provides that in the event of a conviction of any person for a violation of any of its provisions relating to the safety and accommodation of inmates, the board of health is authorized to close such home and to cause its vacation pending the repairs, alterations or additions necessary to make it safe and proper for the occupancy of its inmates and to make it comply with the terms of the ordinance.

The first contention of appellant is that the city is not authorized by the legislature, either expressly or by implication, to regulate and license "Homes" and "Nursing Homes," and was therefore without power to pass the ordinances in question. The principles governing the powers

of cities, including the power to license and regulate, and the source and exercise of such powers have been so frequently enunciated and so fully discussed in the recent decisions of this court (*Arnold* v. *City of Chicago,* 387 Ill. 532; *City of Bloomington* v. *Wirrick,* 381 Ill. 347;) that further elaboration upon the subject is unnecessary. It is well settled that a city, like all other municipal corporations, derives its existence and its powers from the General Assembly; that it possesses no inherent power; that in order to legislate upon, or with reference to, a particular subject or occupation, it must be able to point to the statute which gives it the power to do so; that statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it; that the only implied powers which a municipal corporation possesses and can exercise are those which are necessarily incident to powers expressly granted; and that since a city has no power except by delegation from the General Assembly, in order for it to license or regulate any occupation, the power to do so must be expressly granted or be necessarily implied in, or incident to, other powers which are expressly granted.

Appellees rely upon sections 5, 70, 72, 81, 83, 105, and 106 of article 23 of the Revised Cities and Villages Act as authority for the adoption of these ordinances. (Ill. Rev. Stat. 1945, chap. 24, pars. 23-5, etc.) The authority for the passage of an ordinance need not be wholly derived from a single grant of power by the legislature, but may be derived from several different grants of power. (*City of Bloomington* v. *Wirrick,* 381 Ill. 347; *City of Chicago* v. *R. & X. Restaurant, Inc.* 369 Ill. 65; *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597.) Section 105 of article 23 of said act confers upon municipalities the power to pass and enforce all necessary police ordinances, meaning thereby those police ordinances and those only which are necessary

to the effective exercise of the powers expressly granted to municipalities. (*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597.) This section cannot be invoked by a municipality as an independent source of legislative power, since it was not intended by this section to confer any power except the power to carry out other powers expressly delegated. (*City of Bloomington* v. *Wirrick,* 381 Ill. 347.) The same is true of section 106 of said article, which authorizes a city to pass all ordinances and make all rules and regulations proper or necessary to carry into effect the powers granted to municipalities.

Section 5 gives to municipalities the power to fix the amount, terms and manner of issuing and revoking licenses, but this section confers no authority to issue a license for any purpose. It applies only to cases where the city, by express or implied delegation of power, has been authorized to issue a license. If power is given a city to regulate certain subject matter, such power includes also the authority to exact a license fee for the purpose of defraying all or a part of the cost of regulation or inspection. (*Larson* v. *City of Rockford,* 371 Ill. 441.) It is admitted that the city was given no express power to regulate and license the establishment and operation of homes and nursing homes, as defined in the ordinances here involved, but that fact does not render the ordinances void if the legislature has expressly delegated to the city one or more powers the efficient exercise of which requires that the operation of such institutions be controlled by the limitations of a regulatory or licensing ordinance. (*Chicago Cosmetic Co.* v. *City of Chicago,* 374 Ill. 384; *Fligelman* v. *City of Chicago,* 348 Ill. 294.) The legislature has expressly conferred upon cities the power to prescribe the thickness, strength, and manner of constructing all buildings and of the construction of fire escapes thereon. (Ill. Rev. Stat. 1945, chap. 24, par. 23-70.) Cities are also expressly empowered to prevent the dangerous construction

and condition of chimneys, fireplaces, hearths, stoves, furnaces, pipes, ovens, boilers, and any other fire or heating apparatus used in and about any building; and if they are in a dangerous condition, to cause them to be removed or placed in a safe condition; to cause all buildings and enclosures which are in a dangerous fire condition to be put in a safe fire condition; and to prevent the deposit of ashes in places that create a fire hazard. (Ill. Rev. Stat. 1945, chap. 24, par. 23-72.) These statutory provisions are express delegations of police power under which municipalities are authorized, and it is their duty to adopt proper and reasonable regulations for the protection of the lives and safety of citizens, as well as the protection of property, against danger from fire. It is within the police power of a city, to regulate the construction and use of buildings for the protection of the lives and safety of persons against danger from fire. (*City of Chicago* v. *Wonder Heating and Ventilating Systems, Inc.* 345 Ill. 496; *City of Chicago* v. *Mandel Bros.* 264 Ill. 206.) The legislature, in sections 70 and 72 of article 23 aforesaid, has conferred upon cities the power to regulate the construction and use of buildings, to guard against the calamities of fires, and to provide protection against dangerous conditions in respect to fires.

Section 81, (Ill. Rev. Stat: 1945, chap. 24, par. 23-81,) which grants to municipalities the power to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease, is also a delegation of police power. The health and safety of the population of cities and villages are proper subjects for the exercise of the police power. The most important of the police powers of a city is that of caring for the safety and health of the community. (*Biffer* v. *City of Chicago,* 278 Ill. 562.) Under sections 70 and 72, above mentioned, the legislature has delegated to cities and villages the power and authority to protect the lives and

safety of their citizens from the danger of fire; and under section 81 it has delegated to them authority to promote the health of their population and protect them from disease. Under these delegations of police power from the State, a city may regulate any occupation or business the unrestricted pursuit of which might either injuriously affect the health of the citizens or subject them to danger from fire. If the regulation of certain conditions affecting the public safety has been delegated to a city and the efficient regulation of such conditions requires the conduct of a business peculiarly affected by them to be controlled by the limitations of a licensing ordinance, the power of the city to adopt such an ordinance will be necessarily implied. (*Klever Shampay Karpet Kleaners, Inc.* v. *City of Chicago,* 323 Ill. 368.) The ordinances involved in the case now before us are unquestionably health and safety regulations enacted for the purpose of promoting the health and protecting the safety of the inmates of the institutions affected by the ordinances by guarding such inmates from exposure to disease, impairment of health and the dangers of fire. It being clear that the health, safety and welfare of the inmates of such institutions would be subserved and protected by the ordinances in question, the same are therefore police regulations within the power of the city to enact and enforce under the authority expressly granted by sections 5, 70, 72, 81, 105, and 106 of article 23 of the Revised Cities and Villages Act. This court has held that cities, under their power to guard against fire, to regulate the storage of combustible material, etc., were authorized to license and regulate the business of dry cleaning, (*Klever Shampay Karpet Kleaners, Inc.* v. *City of Chicago,* 323 Ill. 368,) the business of manufacturing cosmetics, (*Chicago Cosmetic Co.* v. *City of Chicago,* 374 Ill. 384,) and the business of operating a filling station, (*Fligelman* v. *City of Chicago,* 348 Ill. 294;) and, under the power to guard against fire, were authorized to regulate and license

the business of installing heating plants, (*City of Chicago v. Wonder Heating & Ventilating Systems*, 345 Ill. 496;) and, under the power to promote health, were authorized to license and regulate laundries, without relying upon the express power given municipalities to regulate laundries. *Ruban v. City of Chicago*, 330 Ill. 97; *Don v. City of Chicago*, 314 Ill. 201; *Moy v. City of Chicago*, 309 Ill. 242.

The existence of the city's power to legislate upon the subject matter of the ordinances in question being established, the next inquiry is whether these ordinances are a reasonable exercise of such power, or whether they are, as counsel contend, unreasonable and discriminatory, and deprive appellant of its property without due process of law .in violation of the State and Federal constitutions. Section 2 of article II of the constitution of this State and the fourteenth amendment of the Federal constitution provide that no person shall be deprived of life, liberty or property without due process of law. "Property" has been defined to include every interest anyone may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy or dispose of the same; and this right of user, which is a part of the property right guaranteed by the constitutions, cannot be wholly taken away or limited by the State except in so far as it may become necessary for the individual rights to yield to the higher and greater law of the best interests of the people. (*Phipps v. City of Chicago*, 339 Ill. 315.) The privilege of every citizen to use his property according to his own will is both a liberty and a property right. The "liberty" guaranteed by the constitution includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his power and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. (*Phipps v. City*

*of Chicago,* 339 Ill. 315; *Western Theological Seminary v. City of Evanston,* 325 Ill. 511.) That property may be destroyed as a result of the legitimate exercise of the police power of a State does not deprive the owner of it without due process of law. (*People v. Anderson,* 355 Ill. 289; *Durand v. Dyson,* 271 Ill. 382; *City of Marysville v. Standard Oil Co.* 27 Fed. 2d 478.) The due-process clauses which appellant invokes do not limit the exercise of the State's police power unless the legislation is an arbitrary, unreasonable or improper use of such power. Before an ordinance regulating and licensing an occupation or business can be sustained as an exercise of the police powers delegated to municipalities to protect against fire and to promote health and suppress disease, such an ordinance must have some reasonable relation to and tend in some degree toward the accomplishment of such objects. If there is no reasonable connection between such occupation or business and the subjects of fire and health protection over which the municipality has been given the authority of regulation and control, the ordinance would be invalid as an unauthorized invasion of private rights. Whether there exists any connection between a given ordinance and any police power claimed to be exercised thereby, and whether such ordinance is a proper exercise of such power or whether the ordinance is unreasonable and arbitrary, are primarily questions for legislative determination. The city council is the judge, in the first instance, of those matters, and unless the exercise of its judgment and discretion is manifestly unreasonable, the courts will not declare the ordinance invalid.

Appellant insists that the ordinances are void because they discriminate between persons in the same situation; that a city has no right to classify a home on the basis that the residents thereof are aged or upon the basis that they are dependent upon the charity of the State or of private philanthropy; and that any law or ordinance making a

distinction in its application between homes or institutions in which the residents are financially self-supporting and those in which the residents are dependent is unreasonably discriminatory and void. The principle is well settled that ordinances must be uniform, fair and impartial in their operation; that they must be reasonable and not arbitrary; that there can be no discrimination against those of the same class; and that regulations must apply to all of a class. However, an ordinance is not void because it discriminates against an individual or group, or because it affects one class and not another. (*Hansen* v. *Raleigh,* 391 Ill. 536.) Every legislative act is discriminatory in the sense that it is inclusive as to some class or group or as to some human relationships, transactions or functions, and exclusive as to the remainder. A classification contained in a statute or ordinance is never unreasonable or arbitrary when there is some basis for the differentiation between the classes or subject matters included as compared to those excluded from its operation, provided such differentiation bears a reasonable relation to the purposes to be accomplished by the act. It is only where some persons or transactions excluded from the operation of the law are, as to the subject matter thereof, in no differentiable class from those included in its operation or where there is no fair reason for the law which would not require with equal force its extension to others whom it leaves untouched, that a law can be declared discriminatory in the sense of being arbitrary and unconstitutional. (*Hansen* v. *Raleigh,* 391 Ill. 536.) A legislative classification may rest on narrow distinctions. (*German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389.) It is not required to be scientific, logical or consistent. (*Hansen* v. *Raleigh,* 391 Ill. 536.) But the distinction must always have a reasonable basis when considered with reference to the purposes of the legislation. (*Marallis* v. *City of Chicago,* 349 Ill. 422.)

The differences upon which classification may be exercised depend necessarily upon the object in view; and what would serve for a classification for some purposes may furnish no reason whatever for a classification for other purposes. (12 Am. Jur. 157, sec. 482.) A city, under its police power to provide for the protection of the health, lives and safety of its inhabitants, may enact legislation affecting only one particular class of inhabitants, and such classification is not discriminatory if there is some fair reason for the application of the law to the class affected which does not also require with equal force its application to others whom it leaves untouched.

The lawmakers and the courts have always recognized that the poor and indigent, for some purposes, constitute a separate and distinct class, requiring the State or a municipality, in the exercise of the police power, to enact legislation for their relief and protection. (*People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557.) The ordinances in question apply to institutions or places used for the reception or care of persons who are dependent. The words "persons who are dependent," in the sense used in the ordinances, mean those persons who are dependent upon the charity of the State or of private philanthropy for their support. The intention of the city council, as to this meaning, appears from section 1 of each ordinance, and therefore this is the meaning which, in construing and applying the ordinances, must be given. This is the rule in all cases. (*Standard Oil Co.* v. *Kamradt,* 319 Ill. 51.) Persons who are dependent are to a greater or less extent in a helpless condition as compared with those who need not look to charity to obtain the necessities of life. Money in the hands of an individual enables him to secure a proper, safe and healthful place of abode, proper food and medical attention, the care of every infirmity, and every assistance that is necessary for his welfare. Persons who are de-

pendent do not have within their power this security and protection. They do not have the same freedom of choice as to where, how, or with whom they may live, and do not have the financial means to assure the protection of their health, safety and welfare. They, therefore, as a class, require this protection from the State or municipality, in the exercise of its police power, to a greater extent than do others who are not dependent. The ordinances here in question, as we have before stated, are both clearly health and safety measures, dealing with and enacted for the promotion of health and the regulation of fire hazards in those institutions to which they apply. We cannot agree with appellant's contention that there is no proper basis for the classification contained in the ordinances differentiating between homes or institutions whose residents are dependent persons and those whose residents are persons not dependent, and cannot agree that there is no fair reason for applying the ordinances to those of the one class and not to those of the other. There are certainly differences between dependent and other persons which have a rational relation to the subject matter of the ordinances and are sufficient reason for the classification adopted.

Appellant also attacks as unconstitutional and void that section of each ordinance which provides that no such home shall be operated in any block in which two thirds of the buildings fronting on both sides of the street on which the home faces are devoted exclusively to residence purposes, unless the owners of a majority of the frontage in the block and on the opposite side of the street give their written consent. The evidence upon the hearing established that there are about ten buildings in the block on the same side of the street as appellant's Sunset Harbor Rest Home, and on the opposite side of the street about ten or eleven buildings, and that on each side of the street there is only one building which is a residence. The fact

that part of a statute or ordinance may be unconstitutional does not authorize the courts to declare the remainder void unless the provisions of the void part are so connected in subject matter and so entwined with the other provisions, each being so dependent upon the other, that it cannot reasonably be presumed that the remainder would have been passed without the passage of the invalid part or section. (*People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) The section requiring written consent of property owners is not an integral or essential part of either ordinance. The other sections of each ordinance are entirely independent of it and provide a complete scheme for the regulation, licensing and operation of homes or institutions of the character defined therein, independent of and without reference to the section in question. We can see no reason why, as a matter of public policy, the city council would not have passed the ordinances with the section in question eliminated. Furthermore, this section requiring the written consent of property owners, whether valid or invalid, under the facts in this case, has no application to appellant. The question of its constitutionality is not a material one in this suit. It is a principle of statutory construction that courts do not pass upon the constitutionality of statutes or ordinances, or any part thereof, when not essential to the determination of the questions before them. (*People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) It is not the policy of this court to decide questions beyond the necessities of the immediate issue.

The decree of the superior court dismissing the complaint for want of equity was proper and is therefore affirmed.

*Decree affirmed.*