(No. 34303.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CECIL WARREN, Plaintiff in Error.

*Opinion filed May 23, 1957.*

422

PAUL D. DAVEY, of Alton, for defendant in error.

LATHAM CASTLE, Attorney General, of Springfield, JOHN J. HOBAN, State's Attorney, of Belleville, (RICHARD W. HUSTED, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Cecil Warren, plaintiff in error, was charged with and fined $50 for violating the provisions of section 121.02 of

the Uniform Act Regulating Traffic on Highways. This section was amended July 15, 1955. (Ill. Rev. Stat. 1955, chap. 95½, par. 218b.) He appeals directly to this court, and we have jurisdiction because the sole question presented is the constitutionality of the section which reads as follows:

"It is unlawful for any person to operate any new motor vehicle of the second division which is purchased on and after September 1, 1955, or any motor vehicle of the second division the splash guards of which have been replaced on and after September 1, 1955, which replacement shall be necessary when present splash guards are unable to prevent the splashing of mud or water upon the windshield of other motor vehicles, upon the highways of this State outside the corporate limits of a city, village or incorporated town, unless such vehicle is equipped with rear fender splash guards which shall comply with the specifications as hereinafter provided and such splash guards shall be so attached as to prevent the splashing of mud or water upon the windshield of other motor vehicles; provided, that on and after January 1, 1957, this amendatory Act of 1955 shall apply to all motor vehicles of the second division.

"The rear fender splash guards shall contour the wheel in such manner that the relationship of the inside surface of any such splash guard to the tread surface of the tire or wheel shall be relatively parallel, both laterally and across the wheel, at least throughout the top 90 degrees of the rear 180 degrees of the wheel surface and the downward extension of the curved surface shall extend to a length which shall end not more than ten inches from the ground.

"Such splash guards shall be wide enough to cover the full trend [sic] or treads of the tires being protected and shall be installed close enough to the tread surface of the tire or wheel as to control the side-throw or wash of the bulk of the thrown road surface material and keep such bulk within a tangent not to exceed 15 degrees measured from a base line formed by the top height of the wheel.

"Such splash guards may be constructed of a flexible material, but shall be attached in such a manner that, regardless of movement, either in such splash guards or the vehicle, such splash guards will retain their general parallel relationship to the tread surface of the tire or wheel under all ordinary operating conditions.

"This Section shall not apply to motor vehicles whose construction does not require such splash guards, nor to motor vehicles in transit and capable only of using temporary splash guards approved by the Illinois State Highway Police."

The validity of this section is challenged on grounds which we shall hereinafter consider separately. The motor vehicle in question is one of the second division—vehicles designed and used for pulling or carrying freight and also vehicles or motor cars which are designed and used for carrying more than seven persons. (Ill. Rev. Stat. 1955, chap. 95½, par. 99.) No controverted fact questions are involved.

Every presumption is in favor of the validity of a statute enacted under the police power. (*Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89, 95; *Zelney* v. *Murphy,* 387 Ill. 492, 499; *Thillens, Inc.* v. *Hodge,* 2 Ill.2d 45, 57.) The only limitations upon the legislature in the exercise of its police power is that the statute must reasonably tend to correct some evil or promote some interest of the State and not violate some positive mandate of the constitution. (*Clarke* v. *Storchak,* 384 Ill. 564, 579; *People ex rel. Christiansen* v. *Connell,* 2 Ill.2d 332, 344.) The General Assembly has a wide discretion in the enactment of laws for the protection of the public health, safety and morals or the promotion of the general welfare and such statutes are valid when they apply accordingly and uniformly to all persons similarly situated. (*City of Chicago* v. *Rhine,* 363 Ill. 619, 624; *Weksler* v. *Collins,* 317 Ill. 132, 138.) In the exercise of its inherent police power the legislature

may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. *Bode* v. *Barrett,* 412 Ill. 204, 225; *City of Evanston* v. *Wazau,* 364 Ill. 198, 202; *Fenske Bros., Inc.* v. *Upholsterers Union,* 358 Ill. 239, 251; *People* v. *Anderson,* 355 Ill. 289, 296.

No person has the right to conduct a business upon the public highways or to devote them to private gain except as the State, by acquiescence or by law, may permit it. (*Hayes Freight Lines, Inc.* v. *Castle,* 2 Ill.2d 58, 64; *Bode* v. *Barrett,* 412 Ill. 204, 219; *Weksler* v. *Collins,* 317 Ill. 132, 139, 142.) If the means be appropriate, the ultimate aim of safeguarding life, health and property upon the highways is clearly within the power of the General Assembly. The legislature may properly enact such a law even though it may interfere with the property of an individual; the overriding consideration being that the safety of the people is paramount to the unfettered use by an individual of his property. *Bode* v. *Barrett,* 412 Ill. 204, 225.

The measure of the reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate to the purpose of the act under all circumstances. (*Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303, 309; *Weksler* v. *Collins,* 317 Ill. 132, 141.) The rapid progress of science and invention has created and is constantly creating new needs for regulation by law. Powerful machines, capable of inflicting death, bodily injury and destruction of property, traverse the arteries of traffic at speeds which, if unregulated, would add to the already frightening total of highway casualties. Chapter 95½, of Illinois Revised Statutes, 1955, contains the various legislative acts making up the motor vehicle law. No reasonable person would question not only the right but the absolute duty of the legislature to imposed these regulations upon those who use the streets and roads of the State. All these regulations, includ-

ing even prohibitions which stand in substantial relationship to the public welfare, must be presumed by the courts to be necessary for the purpose of protecting public health, safety and morals, and must be sustained under the police power of the State.

In the present case plaintiff in error does not question the right of the legislature to provide for and regulate the use of splash guards on motor vehicles. He poses only the question whether the legislature has properly exercised its power by the adoption of the section of the statute under attack in its present form. Tested by the rules of constitutional interpretation alluded to above, we find no merit in the contention that the provisions of that section are unreasonable, arbitrary and capricious. The splashing of water or mud upon the windshields of other vehicles on the road is an evil which the legislature rightfully aims to correct. We can give no weight to the contention of the plaintiff in error that the "mud flaps" which were required upon all trucks under the 1951 statute are to be preferred as more simple and inexpensive. It is within the power of the legislature to solve safety problems, by whatever means it deems best, so long as such means reasonably tend to correct the evil. Since this police regulation is fairly appropriate to the expressed purpose of the statute, it is immaterial so far as the court is concerned, whether it is the best possible means or is inferior to the 1951 enactment which it supplants.

The claim that this statute is "impossible of construction" and "requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at their meaning," is equally without merit. The requirements and specifications for the splash guards are intelligible and ascertainable and the standards for their implementation are fully spelled out. The record shows that, without any difficulty, there can be compliance.

The complaint that this act delegates legislative authority to administrative officials, and is therefore invalid, is not substantiated. It is necessary to distinguish between the delegation of true legislative power and the delegation to a subordinate of authority to execute the law. (*Lydy, Inc.* v. *City of Chicago*, 356 Ill. 230, 235.) As we said, in *City of Evanston* v. *Wazau*, 364 Ill. 198, at page 204: "It is true that while a legislative body cannot divest itself of its proper function of determining what the law shall be, it may nevertheless authorize others to do those things which it might properly, but cannot understandingly or advantageously do itself. * * * This doctrine is sound and has been adhered to for many years, for the obvious reason that government could not be carried on if nothing were left to the judgment and discretion of administrative officers. * * * A clear distinction exists, however, between the power to legislate—to grant the permit under certain specified conditions—and the power to administer or regulate its exercise, once granted. The true distinction is between a delegation of power to make the laws, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made. 1 Sutherland on Stat. Const. 2d ed. p. 148."

The constitution does not require the General Assembly to establish all-embracing absolute criteria whereby every detail and circumstance necessary in the enforcement of the law is anticipated; intelligible standards to guide the agency charged with the enforcement are sufficient. *Hayes Freight Lines, Inc.* v. *Castle*, 2 Ill.2d 58, 65.

The act in question delegates no power to make the law; it merely imposes upon the Illinois State Highway Police the duty and authority of approving temporary splash guards for motor vehicles in transit. The term "vehicles

in transit" is defined by statute. It means those towed or carried. (Ill. Rev. Stat. 1955, chap. 95½, par. 19.) The General Assembly is not required to concern itself with the myriad of transitory circumstances to be encountered. It may confer reasonable discretion upon the proper agency as to the execution of the law. The ministerial duty of approving temporary splash guards for "in transit" trucks is properly delegated to the officials on the spot. The legislature could hardly do this, so it must fall in that twilight area where some discretion is left to the police.

Complaint is made that the statute is discriminatory and that there is no rational basis for the classification between those vehicles which require splash guards and those which do not. A valid and justifiable classification must be based on a real and substantial difference having a rational relation to the subject of the particular legislation. (*Hansen* v. *Raleigh*, 391 Ill. 536, 544; *People ex rel. Heydenreich* v. *Lyons*, 374 Ill. 557, 564; *Crews* v. *Lundquist*, 361 Ill. 193, 197; *Lueth* v. *Goodknecht*, 345 Ill. 197, 199.) The legislature is vested with a broad discretion in making classifications in the interest of the public safety, and the question of classification is primarily legislative and only becomes judicial when legislative action is clearly unreasonable. (*Hayes Freight Lines, Inc.* v. *Castle*, 2 Ill.2d 58, 64; *Weksler* v. *Collins*, 317 Ill. 132, 139; *Heartt* v. *Village of Downers Grove*, 278 Ill. 92, 95.) The test of equal protection of the laws is whether the legislation in question operates equally on all persons in the class to which it applies and not whether that class is treated the same as another class. ·(*Hansen* v. *Raleigh*, 391 Ill. 536, 544; *Smith* v. *Murphy*, 384 Ill. 34, 40; *Murphy* v. *Cuesta, Rey & Co.* 381 Ill. 162, 165.) As to classification and subclassification within an act, it must clearly appear that the judgment of the legislature is erroneous or that the discretion vested in the legislature has been arbitrarily abused and the person who asserts that a classification in a police regulation is

arbitrary or indiscreet has the burden of proof that it does not rest on any reasonable basis. (*Bode* v. *Barrett*, 412 Ill. 204, 227; *Eastman* v. *Yellow Cab Co.* 173 F.2d 874, 881.) In this the defendant has failed.

This classification is reasonable and is based on substantial differences which have a rational relation to the subject matter. This difference is inherent in the two classes of vehicles—bearing in mind the expressed purpose of the regulation, namely, those vehicles required to have splash guards and those whose construction offers ample protection. Vehicles designed to carry not more than seven passengers, commonly called pleasure cars, are constructed so that no splash guards are necessary. While no evidence was offered on the subject the construction of pleasure cars is quite universally known. Judges are not supposed to know less than the average persons. We take judicial notice of the difference between vehicles of the first and those of the second division so far as the need for splash guards is concerned.

Similar considerations justify special treatment of trucks "in transit," (hereinabove described,) which are being transported from the factory to the dealer usually with a temporary in-transit permit rather than a regular license. Clearly, it is not an unreasonable classification to permit the installation of temporary splash guards for the purpose of this single trip.

In *Hansen* v. *Raleigh*, 391 Ill. 536, 544, we said that the test of equal protection of the laws is whether the legislation in question operates equally on all persons in the class to which it applies and not whether that class is treated the same as another class. Nothing in the statute before us would indicate that all vehicles in the exempted classes of "vehicles whose construction does not require such splash guards" and "motor vehicles in transit" will not be treated the same. The legislation operates equally on all vehicles within each of these classifications.

Plaintiff in error relies principally on *Consumers Co.* v. *City of Chicago*, 298 Ill. 339, in support of his contention that the "Splash Guard Act" contains an unlawful classification. An examination of that case shows that it is to be distinguished and is not determinative of the issue before us in the legislation now under review. The court there considered a 1916 ordinance of the city of Chicago requiring "motor vehicles designed for carrying freight and merchandise of 1,500 lbs. capacity or more" to be equipped with front fenders in such a manner and design as to prevent injury to pedestrians. This court held that ordinance unconstitutional for two reasons: first, there was no known standard, nor any provided, for determining the capacity of motor trucks and, second, the classification applied only to some portion of the 13,000 freight-carrying trucks and not to the 60,000 passenger cars in use in Chicago. In regard to the latter ground the court said: "A large mass of evidence of a technical or scientific nature was heard on that subject, from which it appeared that the danger of collision with pedestrians and the front end of passenger cars is at least as great as in the case of trucks." The court determined that the classification was not based upon a substantial difference; that there was no characteristic difference, so far as the object sought to be accomplished was concerned, between trucks with a capacity of 1500 lbs. or more and the smaller motor trucks and passenger cars and the various types of special motor vehicles. We find no similarity between the ordinance in question in the *Consumers Co. case* and the statute under consideration here.

The challenged act is a proper exercise of the police power of the State and is free from any unconstitutional taint.

The judgment of the county court of St. Clair County is affirmed.

*Judgment affirmed.*