(No. 34819.—

The Rudolf Express Co. *et al.,* Appellees, *vs.* Joseph D. Bibb, Director of Public Safety, *et al.,* Appellants.

*Opinion filed September 18, 1958—Rehearing denied Nov. 24, 1958.*

Latham Castle, Attorney General, of Springfield, (Richard W. Husted, of counsel,) for appellants.

DeBoice, Greening & Cronson, of Springfield, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In *People* v. *Warren*, 11 Ill.2d 420, we sustained the validity of section 121.02 of the Uniform Act Regulating Traffic on Highways, as amended in 1955. (Ill. Rev. Stat. 1955, chap. 95½, par. 218(b).) That section required that the rear wheels of motor vehicles of the second division—those designed and used for pulling or carrying freight or for carrying more than seven passengers—be equipped with contour splash guards while being operated on State highways outside of the limits of cities, villages and incorporated towns. In 1957 the section was again amended, principally by exempting certain vehicles from its requirements. The validity of the section as amended is challenged in this case.

The plaintiffs are common and contract motor carriers of general commodities, household goods and livestock in intrastate and interstate commerce. Their complaint sought to restrain the defendants, who are public officials, from enforcing the statute. Both parties moved for summary judgment. The plaintiffs' motion was supported by affidavits; the defendants' was not. The circuit court of Sangamon County held the exemption provisions of the amendment invalid, and held also that their invalidity rendered the entire section invalid. It entered a decree for the plaintiffs, and the defendants appeal directly to this court.

As it stood when the *Warren case* was before this court, section 121.02 required that the vehicles to which it applied be equipped with rear-fender splash guards that would contour the wheel in such manner that the relationship of the inside surface of the splash guard to the tread surface of the tire or wheel would be relatively parallel, both laterally and across the wheel, at least throughout the top 90 degrees of the rear 180 degrees of the wheel's surface. The curved surface was required to extend down-

ward to ten inches from the ground. The splash guards were required to be wide enough to cover the full tread or treads of the tires and to be installed close enough to the tread surface of the tire or wheel to control the side-throw or wash of the bulk of the thrown material and keep it within a tangent not to exceed 15 degrees measured from a base line formed by the top height of the wheel. The splash guards could be constructed of flexible material, but they were required to be so attached that regardless of movement of the guards or the vehicles, the guards would retain their general parallel relationship to the tread surface of the tire under ordinary operating conditions.

Certain minor changes in the design of the required contour guard were made by the 1957 amendment. Their purpose appears to have been to make compliance easier in some particulars. In any event, they do not concern us here because the circuit court held that these changes did not affect the validity of the section and the plaintiffs did not cross-appeal from that ruling.

The main controversy centers upon the validity of the following paragraph which was added to section 121.02 by amendment in 1957: "This Section shall not apply to motor vehicles which do not have more than 2 axles and which are used primarily in agricultural pursuits, nor to pole trailers, dump trucks, 'ready-mix' type of cement trucks, nor to trucks used primarily for transporting grain which are dumped or unloaded by use of hoists or lifts, nor to vehicles operated principally off the highways of this state and used primarily in public construction or for purposes associated with or in aid of drilling, mining or otherwise severing of natural resources from their natural depository nor to motor vehicles operated principally within the corporate limits of a city, village or incorporated town or within a short radius thereof; provided, the Department of Public Safety may, in order to promote greater safety

on the highways of this State and accomplish the purposes of this Section, adopt and promulgate reasonable rules and regulations establishing specifications or designs for splash guards, other than the contour type of splash guard hereinbefore specified, to be used on the vehicles mentioned in this paragraph while said vehicles are operated on the highways of this State. In adopting or promulgating any such rules or regulations, the Department of Public Safety shall consider, among other things, the type of vehicle, the design or construction of the vehicle, the purpose or purposes for which the vehicle is used, the conditions or circumstances under which the vehicle operates and the distance the vehicle travels upon the highways of this State." Ill. Rev. Stat. 1957, chap. 95½, par. 218(b).

The principal question to be determined is whether this added paragraph sets up arbitrary, capricious and unreasonable classifications, in violation of section 22 of article IV and section 14 of article II of our constitution, and the 14th amendment to the Federal constitution. Defendants maintain that the classification is reasonable and does not offend constitutional guarantees. Plaintiffs contend that the classification is discriminatory and is unrelated to the purpose of the statute, and therefore unconstitutional. No question is raised under the commerce clause of the Federal constitution.

Section 22 of article IV prohibits the General Assembly from passing any local or special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. This provision, like the equal protection clause of the 14th amendment to the Federal constitution, is designed to prevent arbitrary discrimination. (*Hansen* v. *Raleigh,* 391 Ill. 536; *Michigan Millers Fire Ins. Co.* v. *McDonough,* 358 Ill. 575.) It does not prohibit legislative classification, but it does require that the classification rest on a reasonable basis and apply

uniformly to all members of the class on which it operates. *City of Chicago* v. *Willett Co.* 1 Ill. 2d 311; *Father Basil's Lodge, Inc.* v. *City of Chicago*, 393 Ill. 246.

The apparent legislative purpose of section 121.02 is to prevent or minimize the splashing of mud or water upon the windshields of other motor vehicles by vehicles of the second division while they are on State highways outside of incorporated areas. The paragraph in question unmistakably requires that one group of those vehicles be equipped with specifically described splash guards, and provides that a second large group need not be so equipped. In support of their contention that the classification is unreasonable, plaintiffs submitted to the trial court the affidavits of two experts who asserted that many of the enumerated vehicles would cause as much or more splash than those not enumerated. For example, it is asserted that the tires of a two-axle vehicle used primarily in agricultural pursuits will splash as much mud and water on a wet highway as those of a similar vehicle used primarily in manufacturing or commercial pursuits. It is unnecessary to discuss the affidavits in detail, because the defendants conceded in their argument before this court that there is no difference in general between the splash propensities of the enumerated vehicles and those which are not enumerated.

The defendants argue, however, that the statute is to be read as requiring that all vehicles of the second division must be equipped with splash guards, although those enumerated can use a type of guard prescribed by the Department of Public Safety instead of the type prescribed by the statute. In other words, they contend that the only classification that is made relates to the type of splash guard required, and that the added paragraph should not be construed as exempting the enumerated vehicles from anti-splash measures. The statute does not support this contention. It provides that the Department "may" promulgate rules and regulations estab-

lishing specifications or designs for other types of splash guards. The language is permissive, and the Department has apparently so construed it, for it is not suggested that any rules or regulations relating to this subject have been adopted.

We read the statute, therefore, as providing that all vehicles of the second division, except those enumerated in the added paragraph, must be equipped with the guard prescribed by the statute. The enumerated vehicles may be required to have a different type of guard only if the Department sees fit to so require. We are unable to conclude that the classification thus prescribed is reasonable.

It is true that some of the enumerated vehicles fall readily into two categories suggested by the defendants: (1) the vehicle makes only occasional use of State highways and it would be impractical to require a permanent splash guard of the kind specified when no guards at all are required on the vehicle during most of its use, and (2) the normal operation of the vehicle would cause repeated damage to the specified splash guard. But if we are to assume that the legislature intended to exclude from compliance those vehicles which make only occasional use of State highways, it is difficult to see why the specified splash guard should be required on foreign vehicles passing through this State. (See *Navajo Freight Lines, Inc.* v. *Bibb*, 159 F. Supp. 385.) And no basis has been suggested to support the distinction which is drawn between the vehicle "used primarily in public construction" and the vehicle used primarily in private construction. There are other disparities which need not be enumerated. In our opinion the trial court properly held the added paragraph invalid.

The next question is the effect of this determination on the other five paragraphs of section 121.02. There are no very reliable clews as to the legislative intent. The statute as enacted in 1935 contained a savings clause (Ill. Rev.

Stat. 1957, chap. 95½, par. 239), but we are unable to draw from that fact any significant conclusion as to the intention of the General Assembly in enacting the 1957 amendment. That the General Assembly was not entirely satisfied with the section as enacted in 1955 is apparent from the adoption of the 1957 amendment. We cannot say, however, that that dissatisfaction indicated a purpose to repeal the original enactment if the added material was held invalid. The legislature intended in 1955 that the act should be operative without the invalid exemptions. There has been no clearly expressed intention to repeal the 1955 provision and we see no significant indications that would support a repeal by implication. (*People ex rel. Akin* v. *Butler Street Foundry and Iron Co.* 201 Ill. 236, 258; *Frost* v. *Corporation Commission of Oklahoma,* 278 U.S. 515, 525-7, 73 L. ed. 483, 490; II Sutherland, Statutory Construction, 3d ed. 1943, sec. 2412.) The exemption provisions of the 1957 amendment are clearly separable from those provisions of the amendment which relate to the design of the required guard.

The plaintiffs have asked that we reconsider the validity of a portion of the section which was sustained in *People* v. *Warren,* 11 Ill.2d 420, and was not changed by the 1957 amendment. After examining the points and authorities cited by the plaintiffs, we see no reason to modify our decision in *People* v. *Warren.*

From what has been said it follows that the trial court erred in restraining the defendants from enforcing section 121.02. The decree is reversed and the cause is remanded for the entry of a decree in accordance with this opinion.

*Reversed and remanded, with direction.*