(No. 29456.—

The People *ex rel.* Louis H. Christensen, Petitioner, *vs.* The Board of Education of School District No. 99, Respondent.

*Opinion filed March 13, 1946*

CUMMINGS & WYMAN, (AUSTIN L. WYMAN, and K. W. TEUTHORN, of counsel,) all of Chicago, for petitioner.

JOHN H. GATELEY, of Chicago, for respondent.

Mr. JUSTICE GUNN delivered the opinion of the court:

The People of the State of Illinois *ex rel.* Louis H. Christensen, made an application for leave to file an original petition for *mandamus* in this court against the board

of education of school district No. 99 of Cook county, Illinois. The motion was allowed and the petition filed.

The petition alleges that Christensen is a citizen, resident and taxpayer of the town of Cicero, county of Cook, and State of Illinois; that School District No. 99, hereafter referred to as the School District, was organized under the general school laws of the State, and is governed at the present time by a board of education consisting of a president and nine members, of whom the petitioner was one; that the boundaries of the School District include all of the territory of the town of Cicero and other territory, and that while no census, general or special, has ever been taken of the School District the Federal census of 1940 shows the town of Cicero has a population of 64,712, and, based upon such fact, alleges that the School District has a population in excess of 60,000; that the School Code of the State of Illinois (Laws of 1945, p. 1331,) was enacted and approved on May 1, 1945, and that at the same session of the legislature House Bill No. 827, approved July 23, 1945, (Laws of 1945, p. 1580,) amended section 1 of article 7 of the School Code, providing for the government of school districts of more than 1000 and less than 100,000 inhabitants, so as to provide for the government of school districts having a population of more than 20,000 and not more than 60,000, with a board of education consisting of nine members, but that if there were more than 60,000 inhabitants, and not more than 500,000 inhabitants, the board of education should consist of twelve members.

It is also alleged that the board of education in January, 1946, adopted a resolution to hold an election for a president of the board to serve three years, and that no election would be held for members of the board; that this resolution further provided that after the second Saturday in April, 1946, the board of education should consist of a president and six members, as provided by the School Law

of 1889, it being the opinion of the board that the School Code of 1945, as well as the amendment of July 23, 1945, and the School Law of 1909 and its amendments are unconstitutional and void; and petitioner therefore alleges that, by reason of the acts of the board of education of the School District, it will not follow the laws of the State of Illinois respecting the election of presidents and members of the board of education of school districts, as required by law, and that he is entitled to have a writ of *mandamus* issue out of this court directed to the said board of education, commanding that it forthwith take the necessary steps to call and hold an election on April 13, 1946, for the election of six members of the board of education, so as to provide a board consisting of twelve members and a president, in accordance with the School Code of 1945 and with the act of July 23, 1945, as amended.

Through its attorney the board of education made a motion to strike the petition for a writ of *mandamus*, and set forth that the School Code and the amendment of July 23, 1945, and the School Law of 1909 (Ill. Rev. Stat. 1943, chap. 122, pars. 134 to 136, incl.) are unconstitutional, illegal and void, because they are uncertain, incomplete and indefinite, and delegate legislative powers to the members of the board of education to determine how many, and when, members of the board of education are to be elected, and fail to contain rules or directions in connection therewith, in violation of article III of the State constitution; and then the motion proceeds to set forth the specific grounds included in the motion, which will be discussed hereafter. Upon the filing of the motion to dismiss, an issue of law was formed, and the issues ordered closed by this court, and dates fixed for the filing of briefs and arguments.

It should be observed at the outset that the contention of the respondent is that not only the general School Law enacted in 1909, under which boards of education have

been elected for almost forty years, but the School Code of 1945 as well, which was merely a re-enactment and re-arrangement of the previous school laws, are invalid because they are incomplete, notwithstanding the fact that during this period of time they have been continuously carried into effect without this defect being made apparent by objection, or court action.

The laws of the General Assembly are presumed to be constitutional and valid, and must be shown to be invalid beyond a reasonable doubt before they will be so construed by this court. *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146; *People Gas Light and Coke Co.* v. *Slattery*, 373 Ill. 31.

The specific objections offered are that sections 1 to 19 of article 7 (Ill. Rev. Stat. 1945, chap. 122, pars. 7-1 to 7-19,) both inclusive, of the School Code of 1945, and the amendment of July 23, 1945, are unintelligible, and fail to set up a standard for the conduct of elections of members of the board of education by failing to prescribe the manner and method of so electing them.

Taking up first the number of members of a board of education, section 1 of article 7 of the School Code of 1945 provides that where there are not fewer than 1000 nor more than 100,000 inhabitants, as ascertained by any special or general census, the board of education should consist of a president and six members; and if, upon the effective date there are in office more than six members such members may complete their terms of office. Later, during the same session of the legislature, section 1 of article 7 of the School Code was amended so as to provide that school districts having at least 1000 and not more than 20,000 inhabitants, as ascertained by any special or general census, should be governed by a board of education consisting of a president and six members, and any district having more than 20,000 and not more than 60,000 inhabitants, as ascertained by such census shall be

governed by a board of education consisting of a president and nine members; and where it contains in excess of 60,000 inhabitants, and not more than 500,000 inhabitants such district shall be governed by a board of education consisting of a president and twelve members, all of whom "shall be elected as herein directed."

Both enactments were at the same session of the legislature. The Code was approved May 1, 1945, and almost three months later the amendment to section 1 of article 7 was approved, being at the same session of the legislature; and, being inconsistent acts, the last act is the one which becomes effective, and becomes the law. (*People ex rel. English* v. *Atchison, Topeka and Santa Fe Railway Co.* 370 Ill. 420.) We can, therefore, disregard the provisions of section 1 of article 7, of the School Code as originally enacted, and consider the act of July 23, 1945, to be the effective act governing the number of members of a board of education of school districts containing from 1000 to 500,000 inhabitants, and which now appears as section 1 of article 7 in the published volume of Illinois Revised Statutes of 1945. Our attention will therefore be directed to the validity of this section.

It is then objected that there is no way to ascertain the number of inhabitants of the school district so as to apply the law, because there was no special or general census of the district. The petition alleges, and the motion admits, that the town of Cicero, with a population of 64,712, was wholly within the boundaries of the district. The district therefore contains at least 60,000 inhabitants by the general Federal census, which gives the number of inhabitants living in the town of Cicero in 1940. We take judicial notice of the fact it is not a subdivision of the State containing over 500,000 inhabitants. The fact there has been no provision for taking a special census is immaterial if it appears from a lawful Federal census that at least 60,000 inhabitants live in a school district, which would determine

the number of members of the board of education, as required by the amendatory law of July 23, 1945. There is no weight to this point.

It is next contended that section 1 of article 7 makes no provision for the manner of electing members of the board of education. Keeping in mind that the act of July 23, 1945, took the place of section 1 of article 7, we also find that section 4 of article 7 provides that except as otherwise provided in the article the election of boards of education shall be governed by the provisions of the act relating to the election of boards of directors. Section 4 of article 6 of the School Code provides for the manner of electing school directors, when the election shall be held, how long the directors shall hold their office, how a vacancy may be filled, nominations made, form of ballot, notice of election, and who shall act as judges, and that such judges shall within ten days cause a pollbook to be delivered to the township treasurer, with a certificate showing the election of directors and the names of persons elected, which book shall be filed by the treasurer and shall be evidence of the election. The provision made in section 4 of article 7 is that the manner of election of members of the board of education shall be governed by the provisions of section 4 of article 6, and not that the duties of such board, or the members thereof, shall be as those of directors.

The contention made by respondent that, since one director is elected *each* year in small school districts, therefore there is a delegation of authority to someone to name and provide for the election of *three* members of the board of education, is an exaggerated application of the constitutional prohibition against delegation of authority, or lack of completeness. When the statute provides that the manner of election of the board is to be governed by the method of election of boards of directors, it means that such scheme, or the general direction set out, is to be followed in the selection of a board of education. There

is no delegation of authority in selecting the number of board members, as the law fixes the number, depending upon the population. This point is not supported by any authority cited to us.

It is also claimed the act is incomplete because, after the School Code and the act of July 23, 1945, became the law, no manner or method is pointed out for the election of the extra members of the board. This does not follow. Section 4 of article 7 of the School Code provides that when a vacancy occurs on the board the remaining members shall, within thirty days, fill the vacancy by appointment until the next regular school election; or, upon their failure so to do, they shall, within the next thirty days, call a special election to fill the vacancy for the unexpired term. The law as amended and effective on July 23, 1945, fixed the number of members of the board of education. School District No. 99 was entitled to twelve members from that time. The extra members were not selected as they might have been, but if it be deemed no vacancy was thereby created there is still a requirement for three additional members of the school board, which members should be elected at the next election, or at a special election. No special election has been called, and, therefore, at the election to be called the second Saturday of April, 1946, School District No. 99, being entitled to twelve members of the board of education, will select candidates for three regular members, whose terms of office will expire on that date, and, also, elect three additional members, one of whom will serve three years, one two years and one for one year. When this election is held and the members selected, the other requirement of the law that one third of the membership of the board be elected each year will follow as a matter of course.

We see nothing in this provision of the law which amounts to a delegation of authority to anyone to select members of the board of education. The law requires

twelve members; three of the present members' terms have expired, and three more are to be elected. If it were only the three additional members to be elected, other provisions of the School Law require them to serve one, two and three years, respectively. As near·as may be, without drawing a chart for each separate school district, the law points out the manner and method of selection, how many members of the board, and for what terms they shall serve, without anybody exercising a legislative discretion.

It is to be observed that for over forty years the manner of election of members of boards of education has been designated in the statute to be the same as the method followed in the election of school directors. While the passage of time is not conclusive as to the validity and constitutionality of a statute, it creates a strong presumption against its invalidity.

The points made by respondent attempting to prove that the law is incomplete and is so vague, indefinite and uncertain that it cannot be put into execution, if adopted by this court, would render practically every law invalid. The omission in the statute to specify every detail step by step, and action by action, will not render a law vague, indefinite or uncertain from a constitutional standpoint. In *Husser* v. *Fouth,* 386 Ill. 188, we said: "to establish the principle that whatever the legislature shall do it shall do in every detail, or else it will go undone, would in effect destroy the government. The government could not be carried on if nothing could be left to the judgment and discretion of the administrative officers. The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." To the same effect is *Department of Finance* v. *Cohen,* 369 Ill. 510. It is only when the legislative act is

so indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended, or when it is so incomplete and inconsistent that it cannot be executed, that constitutes such indefiniteness and uncertainty that will invalidate the law. *Mayhew* v. *Nelson,* 346 Ill. 381.

We do not think there is a single point raised by the respondent that, if presented alone, could not be answered by the court by applied and accepted rules of construction. Take, for instance, the contention that there is no provision for the canvass of votes. There is nothing in the constitution, called to our attention, that renders the law invalid because the votes are not canvassed. Section 7 of article 6 of the School Code, however, provides what the judges of election shall do to constitute proof of election; and provides the judges shall cause the pollbook to be delivered, with a certificate showing the election of the directors, and the names of the persons elected, to the township treasurer. Everybody knows that the showing, by the pollbooks, of the number of votes cast for each candidate, is what is ordinarily known as a canvass, so that even though there were something to respondent's point it is disposed of by section 7 of article 6, providing a procedure which, although not designated by name, has the effect of a "canvass."

The cases to which respondent calls attention are not applicable to the situation before us. The case of *Mayhew* v. *Nelson,* 346 Ill. 381, involved the meaning of the term "prevailing wage." The law was applicable to every county and other subdivisions in the State. The term "prevailing wage" was given no definition, and the effect of the simple use of the term would be to have the law one way in one place and another way in another place, for want of a proper definition of the subject matter of the law. The case before us is one where every provision is uniform for every school district coming under the act.

In the case of *People ex rel. Travis* v. *Rogier*, 326 Ill. 310, the law provided for the reorganization of a township high school district, but made no provision for the time or place of a special election, when or by whom it should be called, nor to whom the vote should be returned. It would appear obvious that the mere enactment of a law authorizing the creation of a school district by an election, without any provision for the election, would be a perfect example of an incomplete law. The difference between that case and this is that all of the matters connected with an election are provided for in the act.

The case of *Husser* v. *Fouth*, 386 Ill. 188, is given as an illustration of an incomplete law, but which, contrary to such contention, was held to be valid, in spite of the objections. We might add we do not approve of counsel so emasculating a quotation from cases as to completely distort its meaning.

We find no difficulty with understanding the School Code of 1945, which is but a codification of the School Law of 1889, nor with the meaning of the amendment made by the act of July 23, 1945. To our mind, they are simple, plain and understandable and require no examination of the validity of the School Law of 1909. If there were any question in our mind as to the constitutionality of the laws under consideration, it would be set at rest by the principle set out in *People ex rel. Simpson* v. *Funkhouser*, 385 Ill. 396, as follows: "Where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the acts must be construed in such a way as to reflect the obvious intent of the legislature and permit the practical application of the statutes. (*York Community High School District* v. *Wagemann*, 375 Ill. 193.) To accomplish this end, the provisions of a statute are to be considered together in the light of the general purpose and object of the act in order to effectuate the main intent and plan therein expressed.

If this intention can be collected from the statute, words may be modified, altered, or even supplied so as to obviate any repugnancy or inconsistency with the legislative intention. [Citing cases.] Again, since statutes are to be considered according to their intent and meaning, a situation which is within the object, spirit, and meaning of a statute is regarded as within the statute although not within the letter."

We are of the opinion that it was and is the duty of the board of education of School District No. 99 to call an election for the second Saturday in April, and at such election to elect sufficient members to constitute a board of twelve members. To do so it will be necessary to make provision for the election of three members of the board whose terms are expiring, and three more for the respective terms, so that the full board will have the terms of four members expiring each three years.

In view of the fact that we find the School Code of 1945, as well as the amendment of July 23, 1945, a constitutional enactment, and not subject to the objections made by respondent, it becomes, of course, unnecessary to pass upon the points affecting the validity of the School Law of 1909, which is superseded by the School Code of 1945, or the School Law of 1889, which was expressly repealed by the School Law of 1909.

We have not attempted to analyze and discuss all of the cases cited by respondent, but only those which illustrate the principles for which they contend. All of these authorities have, however, been carefully examined, and we find nothing in them which justifies the contention that the School Code of 1945 or its amendments are invalid.

The writ of *mandamus* prayed for is ordered to issue forthwith, in accordance with the prayer of the petition and the views expressed in this opinion.

*Writ awarded.*