(No. 32826.—)

THE PEOPLE *ex rel.* Jerome P. Drobnick, Appellant, *vs.*
THE CITY OF WAUKEGAN *et al.*, Appellees.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

MARSHALL S. HOWARD, and OWEN N. PRICE, both of Chicago, for appellant.

FRANK M. DALY, and MICHAEL J. PUCIN, both of Waukegan, and GEORGE R. LYON, of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal presents the question of the constitutional validity of the provisions of section 84-56 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1951, chap. 24, par. 84-56,) relating to the sale and assignment of special assessment judgment liens. The issue arose when Jerome P. Drobnick, the appellant, filed a petition for writ of *mandamus* in the circuit court of Lake County to compel the collector of the city of Waukegan to accept a sum of money sufficient to pay certain delinquent installments of a special assessment on real estate owned by appellant and to enter upon the city records the satisfaction of the installments. The circuit court denied the writ and this appeal has followed.

The general circumstances prefacing appellant's action show that the city, relying upon the authority contained in section 84-56, enacted ordinances authorizing the sale of all its special assessment judgment liens and establishing the procedure to be followed. At a subsequent series of public auction sales, liens totalling $939,742.70 were sold, including the one on appellant's property. The liens were assigned by 2059 separate certificates of assignment and, at the time of the hearing of this cause, 898 certificates representing total liens of $352,869.39 had been satisfied, 485 certificates were in the process of foreclosure and 33 had been completely foreclosed upon.

The petition filed by appellant on March 19, 1952, set forth his ownership of a lot against which a special assessment for water pipes had been confirmed on July 12, 1926, in the amount of $58.75, payable in ten annual installments, and that the last four installments of $5.80 each, together with statutory accruals of interest, penalties and costs, remain unpaid. It further alleges that appellant made a tender of payment of the amounts due to the city collector on March 13, 1952, which was refused on the ground that the city had sold and assigned its lien for these installments to the firm of Hogan and Merchant, so that the city collector no longer had the power to accept payment or to satisfy the special assessment warrant, without instruction from the assignee. After alleging that public officials are the only persons constitutionally authorized to collect special assessments, the petition concluded with a prayer that a writ of *mandamus* issue directing the collector to receive appellant's payment and to satisfy his warrant in the manner required by the statute.

In answer, the city and its collector, set up the ordinances directing the sale and assignment, and detailed the history of the proceedings by which the liens of unpaid special assessments on appellant's property were sold and assigned to the firm of Hogan and Merchant for $20 on

April 10, 1951. The answer also set forth that the assignees have at all times been ready and willing to accept payment of any and all liens sold and assigned to them, to certify to the city that such liens have been fully satisfied, and to authorize and direct the city to discharge the liens from its records. Concluding, the answer further alleged that the duty of the city collector to receive payment of the delinquent installments, except upon direction of the assignees, terminated upon the sale and assignment of the liens.

Hogan and Merchant, the firm which purchased and received an assignment of the liens on appellant's property, was given leave to intervene in the cause and filed an answer alleging that at the time of the public sale of the special assessment liens they were either the owners of, or represented, a large majority of all the outstanding special assessment bonds secured by the liens. It was further stated that the firm was willing to accept payment of the amount due on the delinquent installments, to certify to the city collector that such liens had been satisfied, and to authorize and direct him to cancel and discharge the liens from the city's records.

It was stipulated by counsel for the parties that the last four installments of the special assessment on the particular lot had, in default of bidders, either been withdrawn from sale or forfeited to the People of the State of Illinois at successive annual sales; and that pursuant to an ordinance adopted in 1949, setting up a program for special assessment liquidation, the city council of the city of Waukegan passed an ordinance on March 5, 1951, providing for sale and assignment of judgment liens on special assessments. By its terms\the ordinance provided for a public auction sale, conducted by the city collector, provided that the proceeds of the sale be turned over to the city treasurer for deposit in the special assessment account of the city, and for *pro rata* distribution to the municipality and the holders of bonds, coupons, and vouchers issued

to anticipate the collection of the special assessments involved. The ordinance required the mayor and city collector to execute certificates of sale and assignment to successful bidders; that the collector mark the proper records of the city with a legend noting the sale, and that the collector furnish copies of the ordinance and list of delinquent installments sold and assigned to the county clerk and county collector. A further provision of the ordinance provided for certification by the holder of satisfaction and surrender of the certificate of sale and assignment, so that the city collector could enter upon the proper records of the city a showing of satisfaction and discharge of the lien of assessment installments and issue a certificate of such satisfaction, upon the basis of which the county clerk could enter satisfaction and discharge upon the records of Lake County.

It was further stipulated that the proceedings of sale, as directed by the ordinance, were carried out, and the particular assessments were bid in for the sum of $20, together with a number of other assessments; that Hogan and Merchant were well known to the relator, that the firm was ready and willing, upon payment to them of the installments, and their satisfaction, to certify satisfaction of the lien and to direct the city collector to so mark his records, and that the collector stands ready and willing so to do at the direction of the assignees.

The cause was heard by the trial judge on the pleadings, stipulation, oral arguments and briefs submitted by counsel. At its conclusion the court entered an order denying the writ of *mandamus* and, at the same time, filed an opinion finding, in effect, that the provisions of section 84-56 complained of were valid and constitutional. Appellant's direct appeal to this court is bottomed upon assignments of error which allege that the court erred in not granting the writ of *mandamus* and in not finding unconstitutional and void the aforesaid statutory provision which

permits the sale and assignment of special assessment judgment liens.

The appellant's protestations of unconstitutionality are founded, first, on his contention that special assessments are taxes by nature and statutory definition and that the enforcement of their collection by any but duly authorized public officials, for the benefit of the public treasury, is intolerable under the American system of government. Second, it is urged that section 9 of article IX of our State constitution limits the power to make local improvements by special assessments to corporate authorities of municipalities, thus making unconstitutional and void that portion of section 84-56 which purports to authorize a municipality to divest itself of the right and duty to collect special assessments by the sale and assignment of its statutory lien. Third, it is urged that the statutory provision for the sale and assignment of special assessment liens, which has been a part of the Local Improvement Act since 1915, (Laws of 1915, pp. 287-188,) is in conflict and inconsistent with other portions of the act and must be rejected as inoperative and void. Lastly, it is urged that the statutory provision is so vague and inconsistent in its terms, so incomplete, so lacking in the mechanics of operation and safeguards of the interests of the public and parties affected, that it is wholly ineffective and void.

We find no reason to hold, as appellant suggests, that the legislative enactment which permits the sale of special assessment liens is, in any manner, a "farming out" of public revenues so as to be abhorrent to American governmental principles. Money received in payment of special assessments is not available for public use but is received and held by the municipality as trustee for the holders of special assessment bonds, and in the event of an over-collection from the owners of property which has been assessed, it is to be rebated to such owners. The same is not true of other species of taxation. Indeed, this court has recognized

that special assessments form a peculiar species of taxation, (See: *Wabash Eastern Railway Co.* v. *Comrs. of East Lake Fork Special Drainage Dist.* 134 Ill. 384; *People ex rel. Fisher* v. *Baltimore and Ohio Railroad Co.* 390 Ill. 389,) which, as is stated by Cooley in his work on Taxation, (3d ed. vol. 2, pp. 1134-4,) causes them to stand apart from the general burdens imposed for State and municipal purposes and to be governed by principles that do not apply universally, even though assessments are laid under the taxing power and are in a certain sense taxes. They are, however, said to be a species of taxes which do not come within the meaning of that term as it is usually employed in our constitution and statutes, and it is for that reason that assessments may be laid upon property specially benefited, notwithstanding constitutional restrictions. (Cooley on Taxation, 3d ed. vol. 2, pp. 1181-1200.) A special assessment contains none of the distinctive features of a tax. It is assessed and levied for a special purpose and not for a general purpose, and the assessment is made in the ratio of advantages accruing to the property in consequence of an improvement. Since the assessment can in no case exceed the advantage accruing to the property assessed, it is regarded as but an equivalent or compensation for the increased value the property derives from the improvement the assessment is levied to discharge. *DeClercq* v. *Barber Asphalt Paving Co.* 167 Ill. 215; *People ex rel. Smith* v. *Brewer Estate,* 362 Ill. 88.

Whether or not the peculiar characteristics of a special assessment permit a municipality to assign the enforcement of the lien, appears to be a question upon which there is a sharp division of opinion. (See: 55 A.L.R. 667.) The better rule appears to be, however, that the municipality may assign the enforcement of the lien if given express statutory authority to do so. Appellant relies upon the decisions in which no statutory authority existed, thus they have no application here. Looking to the practice of other

jurisdictions in the matter, and to the distinctions made between "taxes" and "special assessments," it is our conclusion that the enforcement of special assessment liens by assignees of the municipality is not a collection of "taxes" as that term is used and understood in our statutes and constitution.

Turning now to the contention that the provisions of section 56-84 unconstitutionally allow a municipality to divest itself of the right and duty to collect special assessments, our first observation is that such an argument overlooks that the sale of the lien is itself a collection. It is no different from a foreclosure of the lien by the municipality, for in either case the money received is paid over to the holder of the special assessment bonds and the latter's interest in the lien terminates along with that of the municipality. The conclusion that the assignment and sale of the lien is collection, also finds support in previous decisions of this court touching upon sales made under this statutory provision, notably, *Village of Downers' Grove* v. *Glos,* 307 Ill. 293, *Bromberg* v. *Kulp,* 398 Ill. 449, and *People* v. *Forest Park Methodist Church,* 408 Ill. 431. In the *Bromberg case,* we held that the statutory provision not only empowers the municipality to foreclose the lien but, also, to sell and assign it. We noted that it could well be that a municipality would prefer a sale of the lien as a more desirable means of salvage for the bondholders and that when such procedure was followed the assignee is, in turn, authorized to initiate foreclosure proceedings. In addition, we pointed out that the legislative authorization for the sale of the liens did not carry with it a direction that the municipalities could sell only for the full amount of the liens and held that the authority given, necessarily implied that the purchaser of the lien could direct its release. In the *Downer's Grove case,* we held that section 84-56 was not unconstitutional as amending the Revenue Act and recognized that the right of an assignee to foreclose the

judgment lien stood on equal footing with the city's right to foreclose if it so elected. In the *Forest Park Church case* we quoted the statute with approval, stating that while the provision which allowed "either the municipality or the assignees" to file the bill to foreclose gave the municipality a permissible power to foreclose, it did not exclude the concurrent power of the People to also foreclose. While none of the cases discussed involved a consideration of the additional power given an assignee to foreclose, they are helpful as demonstrating the conclusion of this court that the right to sell and assign was a valid method of collection which was not subject to the constitutional objections there raised. Considering these authorities, it is our conclusion that the statutory authority given the city to sell its liens is no more than an alternate means of collection, as distinguished from foreclosure, and that when the course of sale and assignment is pursued, it is not subject to the construction that the city is divesting itself of its duty to collect the assessment.

In answer to appellant's third contention, *i.e.,* that the provisions of section 84-56 which permit the sale and assignment of the judgment lien are in conflict with other portions of the Local Improvement Act, (Ill. Rev. Stat. 1951, chap. 24, art. 84,) we need only say that a conflict is not necessarily implied from the fact that it provides for payment in cash, foreclosure sale of the property or sale and assignment of the lien, as alternative methods for the collection of special assessments. Once collection has been effected by any of the prescribed methods, the other provisions have no further application to the particular lien. Appellant's argument that the provisions for cash payment and for the sale and assignment of the liens are in conflict again ignores that the sale and assignment of the lien constitutes a collection by the municipality, and overlooks that the choice of such alternate method of collection was

occasioned by his failure to make a voluntary payment of cash.

Next to be considered is the contention that the provisions of section 84-56 which authorize the sale and assignment of special assessment judgment liens are so vague and incomplete as to render them ineffective and void. The language complained of is couched in these terms: "The municipality on behalf of which such a lien is created may sell and assign the lien. * * * Either the municipality or the assignees of that judgment lien, at any time in its or his own name, may file a bill to foreclose the lien in the same manner that foreclosures are permitted by law in case of delinquent general taxes." (Ill. Rev. Stat. 1949, chap. 24, par. 84-56.) It is true that the foregoing provision does not spell out every step by which the sale and assignment may be consummated, but that, of itself, does not render the provision vague and indefinite. As stated in *People ex rel. Christensen v. Board of Education,* 393 Ill. 345, at page 353: "The omission in the statute to specify every detail step by step, and action by action, will not render a law vague, indefinite or uncertain from a constitutional standpoint. In *Husser v. Fouth,* 386 Ill. 188, we said: 'to establish the principle that whatever the legislature shall do it shall do in every detail, or else it will go undone, would in effect destroy the government'." These same cases tell us that it is only where the legislative act is so indefinite and uncertain that courts are unable to determine what the legislature intended, or when the act is so incomplete or inconsistent that it cannot be executed, that the law will be invalidated by reason of indefiniteness or uncertainty. This court's treatment of the disputed provision in the cases previously referred to precludes the present application of the rule. Apart from this, section 84-56 is to be read *in pari materia* with section 23-106 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1949,

chap. 24, par. 23-106,) which empowers municipalities to pass ordinances and make all the rules proper and necessary to carry into effect the express powers granted them. This has been done in this case and there is no contention that the city has done so in a way that is not understood or in a manner calculated to increase the express power granted by section 84-56.

There is still another compulsion which exerts itself in a determination of the constitutionality of the statute. In its opinion, the trial court made this observation: "If the statute in question had been recently adopted, some question might be raised as to the wisdom of the legislative provision giving municipalities the right to sell special assessment liens. Many objections could be conjured up, particularly by bondholders fearful of faithless public officers conniving with prospective lien purchasers looking for a bargain. The fact that the statute permitting the sale and assignment of liens has remained in effect since 1915, and that it has only recently been resorted to as a final step to clear up old special assessments is evidence that such fears would have been groundless. The crucial question here is a different one and may be stated in this way: Does the property owner have a vested right under the constitution to pay the balance of the delinquent special assessments levied by a city to the duly elected city collector and to no one else?"

This court may also take cognizance of the fact that this statute has been in existence for thirty-five years, during which its constitutionality and validity have been recognized by the contemporaneous and practical construction given it by the courts, and during which it has had legislative approval and continuous administrative use. The circumstance that no previous attack has been made on the statute may likewise be considered. (*People* v. *Glowacki*, 236 Ill. 612.) Further, the effect a finding of invalidity would have upon innumerable real-estate titles and the

amount involved in dollars are also potential consequences which should be considered by this court. (*People ex rel. Stickney* v. *Marshall*, 1 Gilm. 672; *People ex rel. Badger* v. *Loewenthal*, 93 Ill. 191; *Nye* v. *Foreman*, 215 Ill. 285; *County of Cook* v. *Healy*, 222 Ill. 310; *VanNada* v. *Goedde*, 263 Ill. 105.) Again, in *People ex rel. Christensen* v. *Board of Education*, 393 Ill. 345, we observed that "While the passage of time is not conclusive as to the validity and constitutionality of a statute, it creates a strong presumption against its invalidity." In view of the long presumption of validity with which the disputed provisions of section 84-56 have been clothed, the judicial constructions which have treated them as valid and the immeasurable pecuniary damage and confusion of real-estate titles that a finding of invalidity would precipitate, it is our opinion that such factors must weight heavily against the arguments advanced by appellant.

In practical support of his argument that the authorization for the sale of special assessment liens should be invalidated, appellant suggests, first, that an assignee might disappear and the land become permanently encumbered. While we consider the probability unlikely, we are constrained to say that it is neither more nor less certain than the disappearance of a party to whom a certificate is issued in a foreclosure sale instituted by the municipality and, in either case, the property owner is not without a remedy to clear the title to his property. Next, it is suggested that a delinquent person against whom an assessment is levied might ignore the proceedings until the lien is sold and assigned and thus secure an advantage over his fellow property owners by bargaining with the assignee for a quick return at a low figure. Such an advantage is no different from an advantage that might be gained when the municipality forecloses the lien and the delinquent party redeems at a bargain figure. (See: *People* v. *Anderson*, 380 Ill. 158.) Lastly, it is complained that the special

assessment lien here involved sold for a very small amount. Of this appellant is hardly in a position to complain, for the nominal sale price was possible partially because the appellant, with full knowledge of the sale, made no bid in his own behalf. Actually, the purchaser of his lien represented the majority of the owners of all the outstanding bonds who, no doubt, would have the greatest cause to complain about the price at which the liens were sold. Considered collectively, it is our judgment that the problems raised should more properly be presented to the legislature, if the parties in interest need greater protection of their property rights.

Finding no basis for holding that the statute complained of is void or unconstitutional, we affirm the judgment entered by the circuit court of Lake County.

*Judgment affirmed.*