THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILLY ROSE SPRINKLE, Defendant-Appellant.

(No. 70-108; ▮▮▮▮▮▮▮▮▮

Third District—March 6, 1972.

Bruce Stratton, of Defender Project, of Ottawa, for appellant.

Joseph Polito, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant was charged by indictment in Will County with the

crimes of murder and deviate sexual assault. Subsequently he pleaded guilty to both of these charges and was sentenced to a term of not less than 75 nor more than 90 years for murder and to a term in the penitentiary of not less than 13 nor more than 14 years for deviate sexual assault. The sentences were to run concurrently.

The sentencing of the defendant resulted from offenses which occurred in the late afternoon on September 16, 1968, in the city of Joliet. On that date the defendant was 14 years of age and with a companion, James David Perrequet, who was of the same age. The defendant and Perrequet encountered a 14 year old boy named David Stukel, who was on his way home from school. The defendant and Perrequet attempted to sell Stukel a transistor radio and when Stukel refused to purchase the radio a scuffle ensued in which he was hit, pushed and ultimately dragged into a vacant lot covered with high brush. While in this lot the victim Stukel was forced to submit to acts of fellatio and pederasty. After these acts were completed Stukel was beaten by the defendant and Perrequet with their fists, kicked with their feet and then further struck about the head with a metal bar and a concrete block. The immediate cause of the victim's death was brain damage resulting from the beating.

When the victim's body was found later in the evening an examination disclosed that his back was covered with contusions, lacerations and abrasions. His head was completely covered with blood and deep lacerations. On the victim's back was found a Marlboro cigarette butt, cigarette ash and some discoloration of the skin.

Multiple fractures and brain hemorrhages were found when an autopsy was performed. A police investigation did not indicate that there had ever been any prior contact between the victim, the defendant and Perrequet.

The defendant attacks the constitutionality of the statute which governs the transfer of cases from the juvenile division of the circuit court to the criminal division, Chapter 37, Section 702—7(3), Illinois Revised Statutes. He argues that it fails to afford a meaningful hearing on the transfer because it does not require the court to give reasons for not objecting to a transfer, and that in the instant case a hearing was not held. Also the defendant argues that the statute is infirm regarding allocation of the burden of proof, that it is vague and ambiguous and because of a lack of standards denies to a defendant an equal protection of the law.

The relevant provisions of the governing statute of the Juvenile Court Act are:

"If a petition alleges commission by a minor 13 years of age or over

of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. Taking of evidence in an adjudicatory hearing in any such case is a bar to criminal proceedings based upon the conduct alleged in the petition."

\* \* \*

"If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the minor, with the consent of his counsel, may, at any time before commencement of the adjudicatory hearing, file with the court a motion that criminal prosecution be ordered and that the petition be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. If such a motion is filed as herein provided, the court shall enter its order accordingly." Ill. Rev. Stat. 1967, ch. 37, par. 702—7.

On September 17, 1968, a petition was filed in the juvenile court division of Will County (Will County designates their court having juvenile jurisdiction as the family court division) which charged the defendant with being a delinquent. At hearing held on this date the coroner testified as to the cause of death of David Stukel and an investigator of the Sheriff's office related that the defendant was in custody in connection with said death and that the defendant had admitted his involvement. At the conclusion of the hearing that court found further detention of the defendant was required. On September 27, 1968, the prosecution again appeared in the juvenile court and petitioned that the case be removed to the criminal division of the circuit court of Will County. Counsel for the defendant consented and the trial court stated that it had no objections so the case was so transferred.

The defendant strongly urges that the case of *Kent v. U.S.*, 383 U.S. 541, is controlling of the issues he has raised regarding the validity of the procedures in our Juvenile Court Act pertaining to the transfer of cases from the juvenile court to the criminal division. In *Kent* the U.S. Supreme Court held that a waiver of jurisdiction (by the juvenile court) is a "critically important" action determining the vitally important statutory rights of a minor. The Supreme Court further held that a minor defendant was entitled to a hearing as to waiver and to a statement of reasons for the juvenile court's decision. It is to be noted, however, that

Justice Fortes stated in *Kent* that such a result was required by the District of Columbia statute when read in context with the constitutional principles relating to due process.

The District of Columbia statute is different from the Illinois statute regarding waiver of jurisdiction of a minor in that in the District of Columbia the judge is permitted to waive jurisdiction only after a full investigation. In the *Kent* case counsel for the defendant arranged for his client to be examined by two psychiatrists and a psychologist. He thereafter filed with the juvenile court a motion for hearing on the question of waiver of the juvenile court's jurisdiction, together with an affidavit of a psychiatrist testifying that the defendant was a victim of severe psychopathology and hospitalization for psychiatric observation was recommended. Counsel for the defendant in support of his motion to the effect that the juvenile court should retain jurisdiction offered to prove that if the defendant were given adequate treatment in a hospital under the aegis of the juvenile court he would be a suitable subject for rehabilitation. Counsel for the defendant further moved that the juvenile court provide him access to a social service file relating to the defendant and which had been compiled by the staff of the court. It was the argument of the counsel that access to this file was essential to his providing the defendant with effective assistance of counsel. The District of Columbia Juvenile Court judge did not rule on any of the motions filed by defense counsel. He further held no hearing. He did not confer with the defendant, his parents or counsel, but instead entered an order reciting that after full investigation he waived jurisdiction of the defendant and directed that he be held for trial under the regular procedure of the United States District Court for the District of Columbia. No findings were made, no reason for the waiver was stated, defense counsel's motions were merely ignored as far as any reference to them was concerned. *Sub silentio* he denied motions for a hearing, the recommendation for hospitalization, the request for access to records and the offer to prove that the defendant was a fit subject for rehabilitation.

In the case before us the record discloses a far different procedural picture. On September 17, 1968, a petition for delinquency was filed in which it was alleged that the defendant was involved in a murder. In support of this petition the prosecutor presented two witnesses, one the coroner who testified as to the *corpus delicti,* and a chief investigator for the sheriff's office who testified that defendant had made a statement which involved him in the alleged murder. At the hearing the defendant was represented by counsel and his father was present. The record shows that the court was quite solicitous as to the question of whether or not counsel for defendant was ready to proceed to a hearing or if additional

time for preparation was necessary. During the course of the hearing the court granted a motion of defense counsel which required that certain tapes containing statements of the defendant be produced. The court found that detention of the defendant was required and continued the adjudicatory hearing to September 27, 1968. On this latter date the defendant was again present in court along with his counsel and with both his mother and father. The prosecution then filed a verified petition to locate the case in the criminal division of the circuit court. The petition alleged that the defendant had previously been placed under the supervision of the Juvenile Probation Officer for conduct ranging from criminal damage to property to theft and burglary. The petition further alleged that defendant committed certain acts resulting in the murder of David Stukel. Counsel for the defendant acknowledged that he had been previously served with a copy of the petition and that he could concede to its prayer. The court advised defendant's counsel as to the purpose of the hearing and stated that it was ready to listen to any evidence or arguments. Counsel for the defendant then stated:

"We understand that fully. I would say the detention hearing which went into considerable detail and was very lengthy afforded us a full opportunity for examination under that and further we are adequately advised in the premises and do consent to the petition to let the matter be transferred to the Criminal Division of the Circuit Court."

The court then advised that it had no objection to the petition and the case was transferred to the criminal court division of the circuit court.

We have set forth in detail the procedural aspects of *Kent* and the case before us on appeal because we deem that such a recital is pertinent to the issues raised by the defendant. With this conclusion the defendant does not agree, since his contention is to the effect that the Illinois Juvenile Court Act as far as its provisions pertaining to waiver of jurisdiction are concerned is on its face unconstitutional. Certainly *Kent* did not so hold since the Supreme Court specifically held that its decision was required by the District of Columbia statute when read in the context of constitutional principles. *In re Urbasek*, 38 Ill.2d 535, 232 N.E.2d 716, our Supreme Court stated that *Kent* was limited in its application to the District of Columbia, but that this limitation was effectively removed by the court's admonition in *In re Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, which held that neither the fourteenth amendment nor the Bill of Rights is for adults only. We quarrel not with the decision of *Urbasek or Gault* but we do not believe that they *ipso facto* hold that the Illinois Juvenile Act provisions regarding waiver of jurisdiction and hearings held thereunder are unconstitutional. The *Urbasek* case was concerned with the quantum of proof required for a

finding of delinquency for misconduct which would be criminal if charged against an adult; and *Gault* was limited in its scope to four essentials of due process that are required in a juvenile adjudicatory hearing, to-wit, adequate advance notice of charges, right to counsel, privilege against self incrimination, and the right to confrontation and cross examination of witnesses.

In *People v. Jiles,* a 1969 case, 43 Ill.2d 145, 251 N.E.2d 529, the constitutionality of the statute which governs the transfer of cases from the juvenile division of the circuit court was attacked on the grounds that it failed to afford intelligible guide lines to the judge or to the parties involved as to the issues to be decided; and the allocation of the burden of proof, and that it is an invalid delegation of legislative power since it fails to provide adequate standards. The defendant also attacked the statute on the grounds that it is so vague and ambiguous as to violate the equal protection and due process clauses of the fourteenth amendment to the constitution of the United States. It is interesting to note that the identical statute with which we are concerned was under attack for almost the identical reasons that are raised by the defendant in the case before us. Our Supreme Court did not determine these constitutional questions, however, the court expressed in the form of dictum the following observations:

. "While there would probably be almost universal agreement that it is desirable for a State to maintain a juvenile court and to establish special facilities for the treatment of a separate category of "juvenile delinquents", we are aware of nothing in the constitution of the United States or of this State that requires a State to do so. Similarly, while it may be highly desirable to commit to the judge of a specialized juvenile court the determination of whether or not a particular juvenile is to be prosecuted criminally, we are aware of no constitutional requirement that a State must do so.

"Illinois has chosen not to do so. Under the Illinois Juvenile Court Act the juvenile and his attorney have an uncontrolled discretion to choose to be proceeded against in the criminal court. They may make that choice without regard to any considerations relating to the public interest, or even to the ultimate best interest of the juvenile. No judge has any authority to interfere with that choice. Under the statute a State's Attorney has a similar discretion to determine whether or not to proceed criminally against an alleged juvenile offender. His discretion, however, is not entirely uncontrolled. If the judge who hears the matter in the juvenile division objects to the removal of the case from that division the matter is to be referred to the chief judge of the circuit for decision."

We realize that the remarks from *Jiles* which we have set forth are dicta. Dicta has been defined "as an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar but not necessarily involved in the case or essential to its determination." (Blacks Law Dictionary, 4th Ed.) Accepting the fact that the court's remarks in *Jiles* are dicta only, they nevertheless give us an insight as to how our state's highest tribunal would rule if the constitutionality was questioned of our statute which governs the transfer of cases from the juvenile division to the criminal division of our circuit courts. We can only conclude that our statute's constitutionality would be upheld. The remarks of the court in *Jiles* are not without supporting precedent. (See *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466; *People v. Latimore*, 362 Ill. 206, 199 N.E. 275.) In the *Lattimore* case it was held that the juvenile court was one of limited jurisdiction while the jurisdiction of the criminal court to try cases was vested by Section 26 of Article VI of the State Constitution and that "the legislature is without authority to confer upon an inferior court the power to stay a court created by the constitution from proceeding with the trial of a cause jurisdiction of which is expressly granted to it by the constitution." The *Lattimore* case arose under the Judicial Article of the Constitution of 1870 as it existed prior to 1964 when the Juvenile Court of Cook County was a court of separate jurisdiction created by statute and the Criminal Court of Cook County was a court of separate jurisdiction created by the constitution. Under the present Juvenile Court Act the juvenile court is a division of the circuit court but the reasoning in *Lattimore* was held applicable in the 1968 case of *People v. Hester, supra.*

 After reviewing these cases we conclude that neither *Kent*, *Urbasek* or *Gault* can be interpreted to hold the statute in question unconstitutional on its face. Following the reasoning laid down in the cases of *Jiles, Hester* and *Lattimore*, it is evident to us that our Supreme Court does not accept the defendant's contention that Chapter 37, Section 702 —7(3), Illinois Revised Statutes, is unconstitutional because a hearing on the question of waiver as well as the statement of reasons by the court for its action is not specifically required. It is interesting to note that the defendant makes the assertion that it is questionable if our statute even permits a hearing on the question of waiver of jurisdiction. Not only does our statute allow such a hearing but such hearings frequently occur. In the instant case the trial court offered the defendant such a hearing, but the offer was declined. Such a hearing was held in *People v. Davenport*, 111 Ill.App.2d 197, 249 N.E.2d 328, though on appeal the reviewing court rejected defendant's argument that the de-

termination to relinquish jurisdiction of a minor by a court acting under Chapter 37, Section 702—7, *Illinois Revised Statutes*, is a judicial act and that there must be supporting evidentiary basis upon which the court can act.

■■ An analyzation of the procedure followed in the juvenile court in the instant case can only serve to refute the defendant's assertion that he was denied due process of law and that the burden of proof was allocated to him rather than the prosecution. Unlike *Kent*, the juvenile court of Will County conducted a hearing which determined that defendant should be detained in custody. During the hearing detailed testimony was heard concerning the occurrence of a murder and defendant's involvement in the same. At this hearing the defendant was represented by counsel and his father was present. Ten days later the prosecution filed a verified petition setting forth defendant's age, his attendance and disciplinary records at school, his prior offenses, and detailed facts concerning the murder of David Stukel and defendant's participation in this alleged crime. The petition contained a request that the case be transferred to the criminal division. A far different situation prevailed in *Kent* where the court ignored motions of defendant and on its own initiative ordered transfer of the case after disregarding the District of Columbia's statutory mandate that a waiver of jurisdiction could be ordered "only after a full investigation." Before the juvenile court of Will County at the time the petition for waiver was filed was the defendant, his counsel, mother and father. The judge who had presided at the previous hearing which resulted in the defendant's detention was also presiding when the petition for transfer was filed. The judge explained the nature of the proceedings and advised defense counsel as to defendant's right to a hearing. The parties present had previously heard in the same court testimony that sustained the allegations in the petition regarding the murder and the defendant's involvement. The defendant's counsel was well aware of the content of a statement made by the defendant and which was in the possession of the sheriff's office since the court had previously granted a motion for the production of a recording of such statement. We fail to see where due process of law was denied to the defendant when both his counsel and the court consented to a transfer of the case to the criminal division. Under our present Juvenile Act, which we deem constitutional, everything necessary was done to afford due process of law to the defendant. It is especially pertinent to realize that the waiver of jurisdiction proceedings were commenced by an informative and detailed petition. The prosecution had previously in the same court and before the same judge produced ample evidence to support the critical allegations of this peti-

tion and it is not an unwarranted assumption to say that if objection to the transfer had been made the same evidence was still available. The mere fact that such evidence had been produced and was still available for further production refutes the defendant's contention that the burden of proof had shifted to him.

■■ *Haziel v. United States,* 404 F.2d 1275, is cited by the defendant as holding that "waiver of jurisdiction" by counsel for a minor defendant is not sufficient but a full hearing on the question is still a requisite if due process of law is to be fulfilled. In reviewing *Haziel* we are first impressed with the fact that again we have a District of Columbia case where by statute a "full investigation" is required. Secondly, the court makes it abundantly clear that neither the minor defendant nor his parents were ever consulted prior to the defense attorney's decision to consent to a waiver of jurisdiction. In fact, in *Haziel* one of the determining factors supporting its opinion was that the defendant, although indigent, was not afforded counsel for a period of exceeding five months from the time of his apprehension. The *Haziel* opinion is distinguishable by its inapplicability to the case presently before us. There is no authority to sustain the proposition that due process requires a hearing for all that is required is that the defendant be afforded the opportunity and the right to such a hearing. The defendant in the case before us possessed such a right and we hold that our Juvenile Act provides for a procedure which meets the basic requirements of due process, namely a just and fair hearing.

■■ The defendant further asserts that Section 702—7(3) of the Juvenile Court Act violates the constitutional guarantees of due process and equal protection because of vagueness and ambiguity and that there is a delegation of legislative power without adequate standards relating to its application. In considering these contentions we are mindful of the rule consistently applied by courts of review in our state that laws of the General Assembly are presumed to be constitutional and valid and must be shown to be invalid beyond a reasonable doubt before they will be so construed. (See *Liberty Foundaries Co. v. Industrial Com.,* 373 Ill. 146, 25 N.E.2d 790; *People Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, 25 N.E.2d 482; *People v. Board of Education,* 393 Ill. 345, 65 N.E.2d 825; *North Shore Post No. 21 v. Karzen,* 38 Ill.2d 231, 230 N.E. 2d 833.) The proper test to be applied when the constitutionality of a statute is challenged on the grounds of vagueness and ambiguity is set forth in the case of *People v. Board of Education, supra,* when our Supreme Court stated:

"The omission in the statute to specify every detail step by step, and action by action, will not render a law vague, indefinite or uncertain

from a constitutional standpoint. In *Husser v. Fouth,* 386 Ill. 188, 53 N.E.2d 949, 954, we said: "to establish the principle that whatever the Legislature shall do it shall do in every detail or else it will go undone, would, in effect, destroy the government. The government could not be carried on if nothing could be left to the judgment and discretion of the administrative officers. 'The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made.'" To the same effect is *Department of Finance v. Cohen,* 369 Ill. 510, 17 N.E.2d 327. Its only when the legislative act is so indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended, or when it is so incomplete and inconsistent that it cannot be executed, that constitutes such indefiniteness and uncertainty that will invalidate the law. *Mayhew v. Nelson,* 346 Ill. 381, 178 N.E. 921."

■■ Applying this test we cannot agree with the defendant that the statute is vague and ambiguous. We fail to see that there exists uncertainty as to the application of the provisions of our Juvenile Court Act. The law is not incomplete nor are its provisions indefinite. We acknowledge that the statute grants certain discretion to the State's Attorney but this discretion does not embody the power to make a law but instead confers upon him in certain instances the authority to determine the jurisdiction of a proceedings against a minor defendant; yet this discretion is not unbridled but is subject to a final determination by the judiciary.

■■ We further find that the statute is not lacking in standards and thereby there is no denial of equal protection of law to the defendant. The test of equal protection of law is whether the legislation in question operates equally on all persons in the class to which it applies and not whether that class is treated the same as another class. (*Hanson v. Raleigh,* 391 Ill. 536; 63 N.E.2d 851; *Smith v. Murphy,* 384 Ill. 34, 50 N.E.2d 844; *Murphy v. Cuesta Rey & Co.,* 381 Ill. 162, 45 N.E.2d 26; *People v. Warren,* 11 Ill.2d 420, 143 N.E.2d 28.) The fact that a minor will be treated as an adult as was done in the instant case does not deny him equal protection under the law. Prior to the "waiver of jurisdiction" provided in the Juvenile Act all minors have the same rights and protection and subsequent to a waiver they have the same rights and privileges as that which accrues to all other defendants who have had their case transferred from the juvenile court to the criminal divi-

sion. A statute does not deny equal protection unless it treats one person in a class different from another in the same class. We fail to see any such differentiation or disparity in the execution and administration of the statute being questioned.

■■■■ Defendant also contends that the sentence of 75 to 90 years should be reduced on appeal. Such a sentence may not be consistent with the principles announced in *People v. Jones,* 92 Ill.App.2d 124, 235 N.E.2d 379, where the court recommended imposition of a minimum sentence of not in excess of one-third of the maximum sentence, but as indicated in *People v. Scott,* 117 Ill.App.2d 344, that standard is quoted only as a guide and not as a hard and fast rule. Defendant cites the case of *People v. Cannon* (1971), 49 Ill.2d 163, in support of his contention that the sentence should be reduced. In the *Cannon* case the Supreme Court held that a death sentence was not appropriate for 16 and 17 year old defendants with no prior criminal record and reduced the sentence to 40 to 60 years in the penitentiary. We find almost no similarity in the *Cannon* case to the case before us. Without further recitation of the facts, we conclude that in view of defendant's past criminal record and the brutality of the crime we do not believe that we would be justified in modifying the sentence. See *People v. Caldwell,* 39 Ill.2d 346, 236 N.E.2d 706; *People v. Fox,* (Ill.App.2d), 264 N.E.2d 502.

For the reasons given the judgment of the trial court is affirmed.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER specially concurring:

I agree with the result reached by the majority of the court. I believe that such result may be justified because the record shows that defendant, his attorney and his parents all agreed that defendant could and should be treated as an adult offender. At present it does not appear to me that there is any failure of fundamental fairness in permitting a juvenile to make such a decision in accord with the advice of his counsel as required by the statute and with the participation of the juvenile's parents as is shown by the record. Such a determination is I believe dispositive of the merits of this appeal and consequently no decision on the other constitutional issues raised by the defendant and discussed by the majority is required.

Since the majority has taken a different view with respect to the issues to be discussed on this appeal I find it necessary to indicate my disagreement with the observations of the majority. In my view the statute, ch.

37, par. 702—7(3), is substantially deficient in provisions affording due process to those persons purportedly or presumptively within its ambit.

As a preliminary observation I think it might be helpful to note that some of the terminology employed in cases of this kind is inaccurate and may tend to be misleading when applied to the facts of a particular case or when a particular statutory system is being considered. Such terms as "waiver of jurisdiction", "relinquishment of jurisdiction", "transfer of jurisdiction", or "transfer of the case" tend to obscure the nature of the present controversy which in essence is whether the defendant should or should not continue to be subject to the Juvenile Act. If the juvenile is to be treated as a juvenile then the provisions of the Juvenile Act regarding adjudication, disposition and other related matters are applicable. If not, then the provisions of the Juvenile Act are inapplicable and the provisions of statutes relating to adult offenders are applicable. Generally speaking the issue is whether the provisions of the Juvenile Act shall continue their applicability to the controversy or whether such statute shall be determined to be inapplicable. Under our present court organization such a determination is not one of jurisdiction and not in any technical sense one of transfer. In part the continued use of such language as will be noted hereafter in the opinion is to some extent due to the form of our prior court organization in which the Juvenile Court was considered a separate and inferior court. If it is determined that the Juvenile Act is not applicable it might well be that his case will be transferred but such a result is merely an administrative procedure in accord with the internal organization of the trial court.

As a major premise or general principle it seems to me that the Juvenile Court Act contemplates that it shall be primarily applicable with respect to offenses which may have been committed by persons within the chronological age limitations of the Act. This principle is not disputed in this case and the State followed the statutory procedure by initially filing a delinquency petition with the circuit court which petition was the basis of a subsequent hearing on the issue of whether the offender was a juvenile and whether he should be temporarily detained in custody.

However when it comes to the questions relating to further proceedings to determine the continued applicability of the Juvenile Act or its inapplicability the statute in my opinion fails to set forth constitutionally permissible procedures. *In re Kent v. U.S.*, 383 U.S. 541, *In re Application of Gault*, 387 U.S. 1, 87 S. Ct. 1428 and *In re Urbasek*, 38 Ill.2d 535, 232 N.E.2d 716, discuss eloquently and at length the evolution and application of constitutional requirements to juvenile proceedings. The thrust of the arguments advanced in those cases is that regardless of

the laudable purposes of juvenile statutory systems such a purpose is not a substitute for the requirement that proceedings comport with principles of due process.

Although the majority opinion refers to the *Kent, Gault* and *Urbasek* cases it seems to me that the majority has rejected the principles set forth in the cases on the narrow view that they are distinguishable on their facts. Concededly there is dissimilarity in the facts of this case and those in the cases previously referred to but such dissimilarities neither call for nor permit such principles to be ignored. In *People v. Urbasek, supra,* the court affirmed and applied the principles of *Kent* and *Gault* holding unconstitutional a section of the Juvenile Act providing for determination in accord with a preponderance of the evidence. In holding that the proper standard of proof was that requiring proof beyond a reasonable doubt the court relied on the principles of *Kent* and *Gault* and not on the specific holdings in either of the cases.

The majority in support of its conclusion that the statute and the proceedings are constitutional, relies principally on *People v. Lattimore,* 362 Ill. 206, 199 N.E. 275, *People v. Hester,* 39 Ill. 2d 489, 237 N.E.2d 466, *People v. Davenport,* 111 Ill.App.2d 197, 249 N.E.2d 328 and especially *People v. Jiles,* 43 Ill.2d 145, 251 N.E.2d 529. Before discussing the *Jiles* case which is quoted at some length in the majority opinion, I think the other three cases should be examined to give some understanding of the recent historical perspective of juvenile acts as well as to demonstrate the absence of any particular relevance to the issues of this case.

In accord with the statute applicable to juvenile defendants and the court organization then in effect the court in *People v. Lattimore, supra,* held that the constitutional jurisdiction of the Criminal Court of Cook County could not be limited by the decision of a juvenile court, a separate but inferior court. This case involved the issue of apparently conflicting and competing jurisdictions of two courts and was resolved on the basis that the Criminal Court's jurisdiction could not be affected by a decision of the Juvenile Court. This case did not purport to resolve any issue relating to the application of the substantive provisions of the statute affecting juveniles. Since this case in its specific holding vested all final authority in the Criminal Court it appears to have been interpreted by the legislature and subsequent court decisions as depriving any judge acting under the authority of a Juvenile Act from making any effective determination relating to the applicability of the Act.

*People v. Hester, supra,* decided in 1968, in applying a provision of the Family Court Act, in accord with the *Lattimore* case, held that the Family Court had no statutory authority to prevent a juvenile offender

from being subjected to the criminal laws applicable to adult offenders. According to the court, "Thus Section 9a merely allowed the juvenile court to prevent a concurrent action from proceeding before it, and did not provide an avenue whereby the juvenile court could prevent a criminal action against a minor defendant." Later the court observed, "Moreover, the rule adopted in *Harling v. U.S.* D.C.Cir. 295 F.2d 161, which prevents the admission of juveniles' confessions that are obtained before waiver of jurisdiction by the juvenile court is inapplicable because, as we have just noted, it was not necessary for our juvenile court to waive jurisdiction before the criminal courts could validly proceed".

The third case in the series representing recent history in this area is *People v. Davenport, supra,* decided in 1969, which applied the present section under consideration (702—7(3)) and seemingly adopts the view of *Hester* that the juvenile court has no authority to interfere with the prosecution of a juvenile under the laws applicable to adult offenders. In the *Davenport* case the court neither recognizes that the statute under consideration is different from the one in *Hester* nor that the previous statutory provision and its interpretation were bottomed on jurisdictional conflicts between courts which no longer exist. Although the issue of unconstitutionality of the "transfer" provisions were raised in *Davenport*, they were not considered, a failure which may be explained in part by the fact that the case was decided prior to *Kent, Gault* and *Urbasek*.

In drawing conclusions from the *Lattimore, Hester* and *Davenport* cases I do not wish to be understood as suggesting that the majority has referred or cited such cases because of their persuasive authority. Except for the fact that each of the cases approved of the juvenile having been treated as an adult offender their relation to the present issue is uncertain. I think it is a fair summary of such cases to say that they ignore any question of affording juveniles due process of law and that they consider the discretion of the State's Attorney unlimited in his determination to seek the application of the general criminal laws.

This brings me to *People v. Jiles,* 43 Ill.2d 145, 251 N.E.2d 529, relied on most strongly by the majority. In *Jiles* the court had under consideration an order entered in the Juvenile Division of the Circuit Court of Cook County which dismissed a deliquency petition. The order was entered after a hearing before a judge of the juvenile division upon the motion of the State's Attorney, who sought dismissal of the delinquency petition so that the respondent could be prosecuted criminally. The court dismissed the appeal holding that the order was not final and that no change in the rule relating to appeals from interlocutory orders was advisable to make such order reviewable independently. By implication such an order would be reviewable in the further proceeding resulting

in final judgment of conviction and sentence. The court specifically disclaimed that it was deciding any constitutional question.

The quotation from the opinion set forth in the majority opinion which is characterized as *dicta* upholding the constitutionality of the statutes and proceedings, is neither dicta nor does it uphold constitutionality. Within the context of the opinion such observations are set forth in support of the courts conclusion that the judgment of the juvenile division was not intended by the legislature to be a final judgment. Whatever favorable opinion is expressed by the court with reference to the statutory proceeding is directed toward its relation to the problem which the court is deciding and neither validity nor constitutionality are mentioned. The dual judge scheme described in the statute is characterized as "unique" and "anomolous" and again the court declines to consider the validity of this scheme.

The court in *Jiles* refers to the discretion of the State's Attorney as "not entirely uncontrolled" which when considered in the context of orders denying the application of the juvenile act are reviewable would seem to presage a more critical examination of the statute in its relation to due process of law. According to the court in *Jiles*, "We do not regard the decision of the Supreme Court of the *United States in Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84, which characterized the waiver of jurisdiction as a 'critically important' action, as particularly relevant to this question. *Kent* was concerned primarily with 'the infirmity of the proceedings by which the Juvenile Court waived its * * * jurisdiction.'" In the case at bar not only is the constitutional infirmity of the statute and proceeding an issue thereby making the *Kent* case applicable at least in principle but also the negation of the applicability of *Kent* rebuts any inference that the court in *Jiles* intended its observations to have any bearing in this regard.

Ordinarily minimum standards of procedural due process require a written statement, notice, representation by counsel, and an opportunity to be heard. It requires only a casual examination of par. 702—7(3), ch. 37, Ill. Rev. Stat. 1969, the only relevant statutory provision of the Juvenile Act, to conclude that the statute is completely silent in respect to any of these factors ordinarily considered minimum elements of procedural due process of law. The majority appears to have disregarded the statutory fraility and conclude that the defendant was afforded the procedural due process because the procedure was appropriate even though not described in the statute. It is true that the State's Attorney and the judge did despite the silence of the statute, try to afford a procedure in accord with due process principles and they probably did the best they could under the circumstances. This does not cure the

deficiencies of the statute even though it may be inferred from the majority opinion that they are reading into the Act as essential requirements those procedures ordinarily considered to be minimal procedural due process requirements. Perhaps a court of review can read into a statute the essential procedural due process requirements even though not specified in the statute and thereby uphold its validity. It seems to me that such a rule or practice is not a sound constitutional principle.

My most serious objection to the majority's opinion, the statute and the practice in this case is the absence of any standards or criteria limiting the discretion of the State's Attorney or the court in the determination of the question of whether the Juvenile Act shall continue to be applicable to the juvenile defendant within its purview. As in the case at bar the *Kent* case dealt with a proceeding and underlying statute relating to the trial court's determination of whether the defendant should continue to be subject to the provisions of the Juvenile Act. Since the United States Supreme Court was reviewing a judgment of the Federal District Court for the District of Columbia the constitutional significance of the decision was initially somewhat reduced. *In re Gault, supra* and *In re Urbasek, supra,* later cases, affirm that the *Kent* decision did have broad constitutional significance and its application was not restricted merely to the District of Columbia proceeding. In holding that the District of Columbia proceeding was constitutionally impermissible the court in *Kent,* in language of constitutional dimensions, insisted that a juvenile should not be deprived of the protection or special concern of juvenile statutes except by procedures according due process of law and fundamental fairness. The trial court was reversed for its failure to comply with the statute, a statute which made an effort to establish standards and a procedure relevant to the determination. It seems to me that the observations in *Kent* should and do apply with even more force to our statute which is silent in even the most rudimentary elements of fairness. The future of a juvenile ought not to be so lightly regarded that he should be deprived of the special protection of the Juvenile Act unless reasons or criteria therefore are established. The statute refers only to the discretion of the State's Attorney and the objections of the juvenile court and of the chief judge of the circuit court. How such a provision operates to control the discretion of the State's Attorney or the trial judge is not apparent from either the statute or the majority opinion. In this most significant aspect of the case the opinion of the majority seems ambiguous. It seems to hold that the applicability of the Juvenile Act ought not to depend on the unlimited discretion of the State's Attorney or the trial court. If this be true and I believe that it is or should be true, then where are the condi-

tions or circumstances or other contingencies affecting the applicability of the Act set forth? Obviously not in the statute and consequently I believe the statute to be constitutionally infirm. Again the majority intimates that the defendant received the substantive due process contemplated by the rule that a persons' rights ought to be governed by clearly specified and ascertainable standards because in fact the judge's determination was supported by the pleadings and evidence. In this regard I believe it is sufficient to say that the statute does not establish any criteria for evaluating the performance of the State's Attorney or the trial court or for that matter this court in reviewing the decision. Conceding that the evidence shows the offense to have been brutal and senseless does not alter the fact that the legislature has failed to establish any criteria in the statute establishing the rules to be followed by the court. This may be due in part to lack of commitment to the basic principle that youthful offenders are not merely young adults. The result seems to be an ambivalence either conscious or unconscious in our consideration of juvenile problems.